IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LONNIE KADE WELSH,<br>Institutional ID No. 6516607, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 5:20-CV-024-BQ |
| LAMB COUNTY, *et al.*, | §<br>§<br>§ | |
| Defendants. | §<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Lonnie Kade Welsh filed this action under 42

U.S.C. § 1983 alleging violations of his constitutional rights while detained at the Lamb County

Jail (Jail).  Welsh seeks monetary damages for his alleged injuries.  Am. Compl. 23–32, ECF No.

8.

Welsh filed his original Complaint on January 28, 2020 (ECF No. 1), and an Amended

Complaint on March 4, 2020.  ECF No. 8.  The United States District Judge granted Welsh's

Application to Proceed *In Forma Pauperis* (IFP) (ECF Nos. 5, 9) and transferred this case to the

undersigned United States Magistrate Judge.  ECF No. 9.  The undersigned thereafter reviewed

Welsh's Amended Complaint and authenticated records provided by Lamb County, and ordered

Welsh to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.3d 886, 893–93 (5th Cir.

1976), which he timely completed and returned.  ECF Nos. 17, 18.

Not all parties have consented to proceed before the undersigned magistrate judge.  In

accordance with the order of transfer, the undersigned makes the following findings, conclusions,

and recommendations to the United States District Judge.

1

## I.    Standard of Review

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines

the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or

seeks monetary relief from a defendant who is immune from such relief.[1]    28 U.S.C.

§ 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002)

(affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a

claim under § 1915(e)(2)(B)(i) and (ii)).    A frivolous complaint lacks any arguable basis, either in

fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).    A complaint

has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks

an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327.    When

analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the

plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v.

Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th

Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's

pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may

dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison

records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations

as true, but do not credit conclusory allegations or assertions that merely restate the legal elements

of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).    And while courts

---

[1] At the time he filed his Complaint and IFP application, Welsh was housed at the Texas Civil Commitment Center under an order and judgment of civil confinement. Thus, he is not a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening provisions of the Prison Litigation Reform Act. Because Welsh sought and was granted leave to proceed IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2). Moreover, the acts he complains of allegedly occurred during his detention pending state criminal charges. The Court therefore evaluates his claims under the constitutional standards applicable to pretrial detainees—not civilly committed persons.

2

hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    **Discussion**

### A.  **Welsh's Claims**

Welsh asserts claims against the following Defendants:   (1) Lamb County; (2) Lamb County Sheriff Gary Maddox; (3) Jail Administrator Misty Diaz; (4) Chief Deputy Craig Thompson; (5) Deputy Jonathan Martinez; (6) "Deputy Denis";[2] (7) Doe Defendants; and (8) Scott Say, Lamb County District Attorney.   Am. Compl. 2, 13.   Welsh sues Sheriff Maddox, Jail Administrator Diaz, and Chief Deputy Thompson in their individual and official capacities; all others are sued solely in their individual capacities. *Id.*

Welsh divides his Amended Complaint into twelve counts for relief, summarized as follows:

> *1.   Counts I and II: Denial of Law Library Access in Violation of the First Amendment*

Welsh asserts that between January 1 and June 20, 2018, "Lamb County refused to provide [him] with a law library" to assist in his criminal representation as well as the prosecution of two civil cases in this Court, 5:17-CV-083 and 5:18-CV-020. *Id.* at 2–4 ¶¶ 4–5. Welsh alleges that he asked Defendants Maddox, Thompson, Diaz, and Say for law library access, but they denied his requests. *Id.* at 2–4 ¶¶ 4–5, 11 ¶ 15; Questionnaire 3–4. Welsh further contends that Lamb County denied him access to the law library "by policy, practice, and custom"—i.e., a policy claim, which he attributes to "the policy makers for Lamb County Maddox, Say[], Diaz, and Thompson." Am.

---

[2] Welsh clarified in his questionnaire responses that he intends to sue Deputy Denise Duran. Questionnaire 9, ECF No. 18. The Court will therefore refer to Defendant by that name.

Compl. 4 ¶ 5, 10 ¶ 14; Questionnaire 7. The denial, Welsh claims, "lead [sic] to an 11 year sentence of guilt" in the state criminal case, and dismissals of the civil actions. Am. Compl. 3–4 ¶¶ 4–5.

### 2. Count III: Excessive Use of Force in Violation of the Fourteenth Amendment

Welsh alleges that on January 26, 2018, Defendants Martinez and Duran used "objectively unreasonable force" against him after Defendant Diaz ordered the confiscation of his legal work. Am. Compl. 5 ¶ 6, 13 ¶ 17. According to Welsh, after he stopped resisting, Defendants Martinez and Duran "press[ed] down on [him] hard several times over and over trying to force [him] on the ground," which "compressed [his] body and folded it abnormally." Questionnaire 9–10. Their actions, Welsh claims, caused him pain, a tear in his bladder, "internal bleeding," and blood in his urine. *Id.* at 13; Am. Compl. 5 ¶ 6.

### 3. Count IV: Seizure of Legal Work in Violation of the Fourth Amendment

Welsh contends that Defendants Diaz, Martinez, and Does unconstitutionally confiscated his legal papers during the January 26, 2018, incident. Am. Compl. 5 ¶ 6, 13 ¶ 17; Questionnaire 7–8, 11–12. Welsh concedes, however, that the property was returned to him three days later, on January 29.[3] Questionnaire 13–14. Welsh argues that the temporary confiscation violated his Fourth Amendment and due process rights. Am. Compl. 13 ¶ 17; Questionnaire 14.

### 4. Count V: Unconstitutional Conditions of Confinement and Punishment Without Due Process in Violation of the First and Fourteenth Amendments

Welsh claims that as a result of the January 26 incident, he was placed in a holding cell between January 26 and 29, 2018. Am. Compl. 5 ¶ 7. Welsh avers that during this time, Defendants Maddox and Diaz violated his substantive due process rights by requiring him to eat

---

[3] In his Amended Complaint, Welsh alleges that Defendants also destroyed "several legal documents." Am. Compl. 13 ¶ 17. In his questionnaire responses, however, Welsh states that he no longer wishes to assert such a claim because he does not believe the destruction was intentional. Questionnaire 15.

food loafs, as well as denying him: a toothbrush and toothpaste; stationary; a mattress; recreation time; use of the phone; and access to his legal work. *Id.* at 5–6 ¶ 7, 14 ¶ 18. According to Welsh, Defendants did not provide procedural due process prior to imposing such restrictions. Questionnaire 16–17. Further, Welsh asserts that the foregoing actions violated the Texas Administrative Code. Am. Compl. 14 ¶ 18; Questionnaire 16–17.

5. *Count VI: Unconstitutional Disciplinary Punishment in Violation of Fourteenth Amendment Substantive Due Process Rights*

Welsh avers that on January 31, 2018, the Jail disciplinary committee (consisting of Defendants Thompson and Diaz) found him guilty of, and disciplined him for, "Sexual Solicitation Disciplinary infraction A-8" after he commented to Deputy Duran, "You look sexy using force." Am. Compl. 6 ¶ 8; Questionnaire 25. As a result, he lost thirty days of recreation, television, commissary, and telephone privileges and was placed in segregation. Am. Compl. 6 ¶ 8; Questionnaire 25. According to Welsh, the guilty finding violated his substantive due process rights because he has "a mental disease that compels [him] beyond [his] free will to act out sexually," as evidenced by a state court's finding that he is a sexually violent predator subject to civil commitment. Questionnaire 25. Stated differently, Welsh claims he "was punished for an act [he] [has] no control over" in violation of his constitutional rights. *Id.* at 25–26. Welsh also alleges that the loss of phone and television privileges violated his First Amendment rights. *Id.* at 26; Am. Compl. 6 ¶ 8. Welsh attributes these violations to Defendants Maddox, Thompson, and Diaz, as well as to Lamb County. Am. Compl. 15 ¶ 19.

6. *Count VII: Violation of Fourteenth Amendment Substantive and Procedural Due Process Rights Based on Alleged Change in Disciplinary Charge*

According to Welsh, on February 5, 2018, Sheriff Maddox changed his disciplinary charge "from A-8 sexual solicitation to A-47 disrespect of staff." *Id.* at 7 ¶ 9; Questionnaire 29. The

punishment, however, remained the same. Questionnaire 30. Welsh asserts that he did not receive a second disciplinary hearing, and argues that this violated his procedural due process rights. Am. Compl. 7 ¶ 9, 16 ¶ 20. He further contends that the alleged denial of procedural process violated his due process rights. *Id.* at 16 ¶ 20. In addition to Sheriff Maddox, Welsh names Lamb County, Thompson, and Diaz as Defendants to this claim, although he does not specify how they were involved. *Id.* at 7 ¶ 9, 16–17 ¶ 20; Questionnaire 29–30.

### 7. *Count VIII: Denial of Access to Phone in Order to Post Bond in Violation of the First, Fourth, and Fourteenth Amendments*

Welsh asserts that while he was serving the thirty-day phone restriction for the disciplinary infraction, Defendants Thompson and Diaz denied him access to the phone, which prevented him from posting bond. Am. Compl. 8 ¶ 10. Further, Welsh contends that Lamb County, "through its policy makers and Diaz and Thompson[,] . . . knew or should have known that plaintiff was in need of procedural protection of his substantive rights to post bail by making a phone call . . . ." *Id.* at 18 ¶ 21. Welsh claims that a family member, Lonnell Hanks, would have posted bond, but "he need[ed] to inform her as soon as possible." *Id.* at 8 ¶ 10. Welsh alleges that on January 27, January 30, February 2, February 7, and February 10, 2018, he asked Defendant Diaz to use the phone, while on January 30 and February 9 he made the same request to Defendant Thompson. Questionnaire 31. According to Welsh, Defendants Diaz and Thompson denied those requests. *Id.* Welsh concedes that had he posted bond, he would have returned to the Texas Civil Commitment Center, but he states that he wished to return so he could use the law library. *Id.* at 30–31.

> 8. *Counts IX and X: Charging Excessive Rates for Phone Time and Commissary Items in Violation of the First and Fourteenth Amendments*

In Counts IX and X, Welsh raises a similar argument: that between November 28, 2017, and June 20, 2018, Lamb County maintained excessive rates for commissary items and phone time. *See* Am. Compl. 9 ¶¶ 11, 12, 19–20 ¶¶ 22–23. With respect to phone rates, Welsh alleges that Lamb County "place[d] and [sic] undue burden and a chilling effect upon [his] First Amendment right to speech by overcharging and price gauging [sic] [him] to use the telephone to contact friends and family . . . [at] an inflated price of $1.00 per minute . . . ." *Id.* at 9 ¶ 11. Despite the cost, however, Welsh estimates that he was able to make approximately seventy-five phone calls. Questionnaire 32.

Regarding the commissary prices, Welsh avers that Lamb County "place[d] and [sic] undue burden and a chilling effect upon [his] fundamental right to acquire property through the commissary system" by charging prices "far in excess over the normal purchase price." Am. Compl. 9 ¶ 12. Welsh claims that due to the high costs, he was unable to purchase stamps for writing letters to family, "[f]ood" such as "soups, chips, candy, pastries, meat packs, [and] drinks," thermals "because it is freezing cold," and games such as a chess board. Questionnaire 33. Welsh contends that the inability to purchase these items denied him the opportunity to "escape from the dregs of the situation," resulting in depression and lack of a bond with his family. *Id.* at 33–34.

> 9. *Count XI: Denial of Ability to Purchase Certain Books in Violation of the First Amendment*

Welsh alleges that Lamb County, "by its policy practice and culture," denied him "the right to order a book from an outside vender [sic]." Am. Compl. 9 ¶ 13. Specifically, Welsh asserts that he was not able to purchase a dictionary as well as books that would help him "to escape the

dungeon they placed [him] in." *Id.*; Questionnaire 34. Welsh argues that the denial of these books violated his First Amendment rights. Am. Compl. 20 ¶ 24.

*10. Count XII: Claim Against Lamb County Based on Municipal Liability*

In Count 12, Welsh generally avers that Lamb County, through its policy makers Defendants Maddox, Thompson, and Diaz, violated his Fourteenth Amendment rights by disciplining him and thereafter changing the operative disciplinary infraction. *Id.* at 21 ¶ 25. Welsh contends that this violation caused "sever[e] depression, with the loss of consortium, with the affirmative restraint by denying privileges in the pursuit of happiness by restricting the ability to acquire property, and disabling [him] of his rights and privileges of citizenship of association and communication with family and friends . . . ." *Id.*

**B. Welsh has not stated a cognizable constitutional claim based on the purported denial of access to the law library (Counts I and II).**

Welsh alleges that between January 1 and June 20, 2018, Defendants denied him access to a law library; therefore, they denied him access to the courts. Am. Compl. 2–4 ¶¶ 4–5. Detainees have a constitutional right of meaningful access to the courts. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Buckenburger v. Strain*, Civil Action No. 06-5670, 2006 WL 4503353, at *3 (E.D. La. Oct. 20, 2006). The right of access, however, is not unlimited. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Jones*, 188 F.3d at 325. Instead, institutions need only provide access to law libraries *or* legally trained personnel, such that detainees have an "adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Jones*, 188 F.3d at 325; *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996). That is, detainees are "not guarantee[d] . . . the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355.

Regarding his claim that Defendants unconstitutionally denied him law library access to defend against state criminal charges, Welsh cannot state a claim. A detainee who has counsel representing him with respect to pending criminal charges is not entitled to independent law library access. *See Clayton v. Brazos Cty. Sheriff Office*, 448 F. App'x 465, 465 (5th Cir. 2011) (concluding that detainee "had access to the courts" because "at all relevant times, he was represented by appointed counsel"); *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. Unit A June 1981) (explaining that "[a]s long as a criminal defendant is represented by counsel, he will be able to present matters for decision to the court through motions filed by his attorney" and therefore is not denied access to the courts by the lack of law library access). Welsh concedes that court-appointed counsel represented him in the state criminal case and, after he elected to proceed pro se, Jail officials transferred him to Lubbock County Detention Center, where he had access to a law library. Questionnaire 2. But even to the extent Welsh contends that he did not have law library access "as he represented himself under the criminal accusation" (Am. Compl. 2 ¶ 4), Welsh had no right of access because he chose to proceed pro se. Questionnaire 2 (stating that he did not want a court appointed attorney "because [he] knew [he] either had to have an attorney or be allowed the law library"); *see White v. Longino*, 428 F. App'x 491, 491 (5th Cir. 2011) ("A prisoner, who knowingly and voluntarily waives appointed representation by counsel, may not file a 42 U.S.C. § 1983 action asserting that he was denied the constitutional right to access to a law library in preparing a pro se defense in a criminal trial."); *Degrate*, 84 F.3d at 769 (holding that plaintiff, "having rejected the assistance of court-appointed counsel, . . . had no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial").

Similarly, Welsh has failed to state a claim based on his purported lack of law library access as he prosecuted federal civil actions. To prevail on his claim, Welsh must show that "he lost an

actionable claim or was prevented from presenting such a claim because of the alleged denial."

*Clark v. Johnson Cty. Jail*, No. 3:16-CV-2087-D-BH, 2017 WL 979060, at *3 (N.D. Tex. Feb. 10,

2017) (citing *Lewis*, 518 U.S. at 356), *R. & R. adopted by* 2017 WL 976951 (N.D. Tex. Mar. 13,

2017); *Carter v. Lowndes Cty.*, 89 F. App'x 439, 442 (5th Cir. 2004). Welsh must demonstrate an

actual injury in the form of prejudice by "identify[ing] a nonfrivolous, arguable underlying claim

*that he has been unable to pursue*." *McGarrah v. Alford*, No. 3:14-CV-1125-N, 2014 WL

11633696, at *1 (N.D. Tex. Apr. 8, 2014) (emphasis added) (citing *Christopher v. Harbury*, 536

U.S. 403, 415 (2002)), *R. & R. adopted by*, 2014 WL 11633697 (N.D. Tex. May 15, 2014), *appeal

dismissed by* 783 F.3d 584 (5th Cir. 2015). Welsh has failed to plead facts showing that he suffered

actual harm.

Welsh claims that the alleged lack of access resulted in the dismissals of cases 5:17-CV-

083 and 5:18-CV-020—two § 1983 lawsuits before this Court. Am. Compl. 3 ¶ 5. In 5:17-CV-

083, which defendants removed from state court, the district judge dismissed Welsh's claims

against the Texas Civil Commitment Office (TCCO) because it possessed sovereign immunity and

the Court therefore lacked subject matter jurisdiction to consider Welsh's claims. *Welsh v. Tex.

Civil Commitment Office*, Civil Action No. 5:17-CV-083-C, 2017 WL 6450961, at *1 (N.D. Tex.

Sept. 7, 2017) (Cummings, J.). In that same order, the district court granted in part Welsh's motion

to amend the complaint, giving him fourteen days to file an amended complaint "addressing the

deficiencies pointed out by [the remaining] Defendants' Motions to Dismiss." *Id.* at *2. The Court

cautioned Welsh "that if he fail[ed] to file an amended complaint as instructed above, the Court

[would] enter a final judgment dismissing the above-styled and -numbered civil action without

prejudice."[4]  *Id.* at \*2.  Instead of filing an amended complaint, Welsh elected to file a notice of appeal.[5]  *Welsh v. Tex. Civil Commitment Office*, Civil Action No. 5:17-CV-083-C, ECF No. 50.

The district judge subsequently granted Defendants' motions to dismiss because Welsh failed to file an amended complaint and there was, therefore, no live pleading on file in the case. *Id.* at ECF Nos. 75, 83.  The Court noted that "[a]lmost eleven . . . months [had] elapsed and Plaintiff still ha[d] not filed any amended pleading[,] . . . in direct violation of the Court's September 7, 2017 Order."  *Id.* at ECF No. 83.  The Court further explained that the "September 7, 2017 Order was not merely a suggestion for Plaintiff to comply at his leisure or in accordance with a schedule he deemed more appropriate."  *Id.*  The district court dismissed Welsh's claims against Correct Care Solutions and the TCCO employees without prejudice.  *Id.* at ECF Nos. 75, 83.

Welsh now argues that the foregoing dismissal resulted because he "did not have the legal authorities[,] both case law and Federal statutes" to adequately prosecute the action, and he "didn't know" to "stay the cause of action pending appeal."  Questionnaire 5.  But as set forth above, the district judge directed Welsh to file an amended complaint by September 21, 2017—months prior to the dates Welsh claims he did not have law library access.  Moreover, the district judge dismissed Welsh's claims because he failed to comply with a Court order, not because he lacked case authority.

---

[4] The Court notes that this order was entered *prior* to the time-period in which Welsh alleges he did not have law library access, i.e., between January and June 2018.

[5] On appeal, the Fifth Circuit affirmed the district court's dismissal of TCCO because Welsh made general arguments and "fail[ed] to address the district court's reasoning or brief any other relevant issues . . . ."  *Welsh v. Tex. Civil Commitment Office*, 730 F. App'x 257, 258 (5th Cir. 2018).  The court further noted that it lacked jurisdiction to review Welsh's claims against the remaining defendants—"Correct Care Solutions or the TCCO employees"— because the district court had not yet entered a final judgment.  *Id.*

Regarding case 5:18-CV-020, Welsh argues that he lacked "the proper authorities and guides on how to state a claim and cite to the elements of the constitutional violations." Questionnaire 6. Welsh claims that had he received access to the law library, he would have pleaded different facts and legal theories. *See id.* The undersigned provided Welsh the opportunity, however, to amend his complaint and expand upon his claims through testimony at a *Spears* hearing. Thereafter, the undersigned dismissed the action as frivolous and for failure to state a claim not because Welsh cited incorrect legal standards, but because he did not plead adequate facts—information that was known to Welsh in spite of any information he could have obtained from a law library. *Welsh v. Correct Care Recovery Sols.*, Civil Action No. 5:18-CV-020-BQ, ECF No. 43 (N.D. Tex. Apr. 24, 2019).

In sum, Welsh does not contend that he was prevented from filing a non-frivolous legal action or otherwise hindered in his ability to pursue either case (5:17-CV-083 and 5:18-CV-020)— e.g., that he was unable to file pleadings, give testimony at a *Spears* hearing, comply with a technical requirement, or otherwise raise a non-frivolous, arguable claim. In effect, Welsh expresses dissatisfaction with the *outcome* he obtained in cases he *was able to pursue*, despite alleged inadequacies in or lack of access to a law library. *See* Questionnaire 5–6. Such an assertion fails to state an actionable injury sufficient to support a viable constitutional claim.[6] *See Lewis*,

---

[6] To the extent Welsh argues that the lack of access prejudiced his ability to pursue his appeal, his claim is also without merit. Welsh asserts that he "had to rely on what was only suppose [sic] to be [his] notice appeal as [his] brief" because he "had no cause law authorities." Questionnaire 5. A review of the appellate docket, however, shows that the Fifth Circuit initially entered an order on December 11, 2017 (prior to Welsh's claimed lack of library access), requiring Welsh to submit a brief no later than January 22, 2018. *Welsh v. Tex. Civil Commitment Office*, No. 17-11092 (5th Cir. Dec. 11, 2017). On February 8, 2018, the court dismissed Welsh's appeal for failure to file a brief (*Welsh v. Tex. Civil Commitment Office*, No. 17-11092 (5th Cir. Feb. 8, 2018), but Welsh subsequently filed a motion, which was granted, requesting the court reinstate the appeal. *Welsh v. Tex. Civil Commitment Office*, No. 17-11092 (5th Cir. Mar. 1, 2018). In his motion seeking to reinstate the appeal, Welsh specifically asked the Fifth Circuit to consider a document entitled "Interlocutory Appeal" as his brief, arguing that he "did file a Brief[,] albeit early." *Welsh v. Tex. Civil Commitment Office*, No. 17-11092 (5th Cir. Feb. 21, 2018). The brief that Welsh asked the Fifth Circuit to consider contained a section addressing TCCO's sovereign immunity, along with citations to statutes and cases. *Welsh v. Tex. Civil Commitment Office*, No. 17-11092 (5th Cir. Mar. 1, 2018). In other words, Welsh initially disregarded a deadline and, after he requested reinstatement of the case, was permitted to file a document he considered

12

518 U.S. at 351 (explaining that the actual injury requirement might include, "for example, that a complaint [prisoner] prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known," or that "he was unable even to file a complaint"); *Ganther v. Chaney*, Civil Action No. G–09–267, 2012 WL 1552798, at *1–2 (S.D. Tex. Apr. 30, 2012) (dismissing prisoner's claim that defendants denied him access to the law library resulting in dismissal of his habeas petition, where prisoner did not demonstrate he "was denied the ability to bring a non-frivolous legal claim," and docket reflected that he responded to summary judgment motion and "had every opportunity to pursue every legal remedy available"); *Pickett v. Nunn*, Civil Action No. 4:08–CV–708–Y, 2009 WL 899769, at *2 (N.D. Tex. Apr. 2, 2009) (dismissing prisoner's access to courts claim based on defendants' purported failure to provide documents, where prisoner did "not allege that he was prevented from making the factual allegations in each suit due to the lack of records, [but] rather . . . contend[ed] the records would have confirmed his claims that dates were falsified"); *Buckenburger*, 2006 WL 4503353, at *4 (recommending dismissal of prisoner's access to courts claim where although the court ultimately concluded that the case should be dismissed, such "fact stem[med] purely from the frivolity of his underlying claims, not from any limitations on his access to legal supplies and materials"). The undersigned therefore recommends that the District Judge dismiss Welsh's access to the courts claims (Counts I and II) because Welsh: (1) possessed no right of access when he had court-appointed counsel in an underlying criminal action; and

---

a brief. It is only now, after the Fifth Circuit dismissed his appeal for failure to adequately challenge the district court's ruling, that Welsh contends his brief was inadequate due to lack of law library access, but he does not identify any issue he was prevented from raising as a result. Finally, the Court also notes that Welsh concedes, and the authenticated records show, he received law library access between December 5, 2017, and January 4, 2018, while housed at the Lubbock County Detention Center—i.e., within the original briefing deadline set by the Fifth Circuit. *See* Questionnaire 2.

(2) failed to show he suffered an actual injury with respect to the dismissal of two civil cases before this Court.[7]

### C. The District Judge should dismiss Welsh's excessive use of force claims against Defendants Diaz and Duran and should require Defendant Martinez to answer (Count III).

Welsh alleges that on January 26, 2018, Defendants Martinez and Duran used "objectively unreasonable force" against him after Defendant Diaz ordered the confiscation of his legal work. Am. Compl. 5 ¶ 6, 13 ¶ 17. According to Welsh, after he stopped resisting, Defendants Martinez and Duran "press[ed] down on [him] hard several times over and over trying to force [him] on the ground," which "compressed [his] body and folded it abnormally." Questionnaire 9–10. Their actions, Welsh claims, caused him pain, a tear in his bladder, "internal bleeding," and blood in his urine. *Id.* at 13; Am. Compl. 5 ¶ 6.

The United States Supreme Court has recognized that a pretrial detainee's use of force claim arises under the Fourteenth Amendment, and "that a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (abrogating lower courts' application of Eighth Amendment excessive force standards in *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399–400. In determining the objective reasonableness of an officer's use of force,

---

[7] To the extent Welsh alleges that his constitutional rights were violated based on a Lamb County policy, his claim should be dismissed. A plaintiff must allege an underlying constitutional violation as a necessary prerequisite to pleading a successful municipal liability claim. *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Kitchen v. Dall. Cty.*, 759 F.3d 468, 483 (5th Cir. 2014)).

a court should consider the following non-exclusive factors: (1) "the relationship between the need for the use of force and the amount of force used;" (2) "the extent of the plaintiff's injury;" (3) "any effort made by the officer to temper or to limit the amount of force;" (4) "the severity of the security problem at issue;" (5) "the threat reasonably perceived by the officer; and" (6) "whether the plaintiff was actively resisting." *Id.* at 397.

Initially, the Court observes that Welsh's claim against Defendant Diaz based on a purported use of force should be dismissed. Am. Compl. 11 ¶ 16 (naming Diaz as a Defendant with respect to the use of force claim). Welsh alleges that Diaz "order[ed] the confiscation of [his] property," which led to the use of force incident. *Id.* at 5 ¶ 6; *see* Questionnaire 8. Welsh pleads no facts indicating that Defendant Diaz participated in the force or otherwise violated his rights during the use of force.[8] Am. Compl. 5 ¶ 6; *see* Questionnaire 8. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Thus, to the extent Welsh attempts to assert a claim of excessive force against Defendant Diaz, it should be dismissed.

Regarding his claim against Defendants Martinez and Duran, Lamb County provided video footage of the incident. The surveillance video does not have sound.[9] It begins by showing Welsh pacing in a small cell[10] that has a bed, mattress, pillow, toilet, and sink (with running water). Welsh's property box sits on top of the bed. Welsh brushes his teeth and then wets wads of toilet paper. Standing on the toilet and the bed, he attempts to cover-up the cameras in his cell using the

---

[8] Welsh's claim that Defendant Diaz unconstitutionally confiscated his legal materials is addressed in Section II.E. below. *See* Am. Compl. 11–12 ¶ 16 (asserting that Defendant Diaz violated his rights by confiscation his personal property).

[9] The video also does not contain a timestamp. The Court therefore generally summarizes the video.

[10] The authenticated records and accompanying video footage reflect that officials moved Welsh to a one-person cell after he created a disturbance in the four-person cell to which he was assigned.

toilet paper. In response, Jail officials come to his cell. Initially, Welsh can be seen having a conversation with unknown persons off-screen. After a few minutes, two male officials—one dressed in uniform and the other in plain clothes[11]—appear on screen. Investigator Weston speaks with Welsh, who has a tray in his right hand. Welsh takes a threatening stance while continuing to engage in intense conversation with Investigator Weston, and two other uniformed officials enter the cell.[12] Welsh hands over the tray to Deputy Martinez and, as Investigator Weston exits the cell, Welsh begins yelling and walking toward him. Welsh moves his head several times toward Weston,[13] who then re-enters Welsh's cell. Both Investigator Weston and AJA Torres move to confiscate Welsh's property box. Welsh also moves to the box and grabs it away from the officials. A struggle ensues.

AJA Torres and a female official are able to confiscate the property box from Welsh. Investigator Weston, Jailer Knox, and Deputy Martinez then move Welsh to the floor where they attempt to restrain him. Welsh sits on the floor, cross-legged, with his hands tucked into his body to prevent officials from handcuffing him. Deputy Martinez and Jailer Knox struggle to free Welsh's hands, while Investigator Weston and AJA Torres clear all of Welsh's property— mattress, bedding, personal items—from the cell. During this time Welsh scoots himself to the back wall of the cell near the toilet. AJA Torres then moves to assist Martinez and Knox, who are still trying to handcuff Welsh. The video shows that Martinez and Knox move Welsh from the back wall into the center of the cell, where they place him on his stomach. Welsh continues to

---

[11] Based on the authenticated records, it appears the plain-clothes official is named Investigator Weston and the uniformed official is Deputy Martinez.

[12] According to the records, the officers are Assistant Jail Administrator (AJA) Torres and Jailer Knox.

[13] Investigator Weston reported that Welsh "lunged his head in my direction." Welsh denies taking such action (Questionnaire 11), but the video clearly reflects that Welsh moved toward Weston. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that the district court did not have to accept the plaintiff's description of his driving where it was "blatantly contradicted by" video from the police car's dash cam).

16

refuse to relinquish control of his hands, however, which he holds underneath his body. After a few seconds, Deputy Duran begins assisting Martinez and Knox in handcuffing Welsh. They are successful, and the video ends with officials escorting the handcuffed Welsh out of the cell.

Welsh claims that Deputy Duran "press[ed] down on [him] hard several times over and over trying to force [him] on the ground." Questionnaire 10. According to Welsh, "Duran forced [his] body in an abnormal position . . . caus[ing] [him] sever[e] pain in [his] lower abdominal area." *Id.* The video reflects, however, that Deputy Duran did not use any force against Welsh until the last approximate thirty seconds of the incident—after he lay flat in the middle of the cell. Deputy Duran assisted Deputy Martinez and Jailer Knox in freeing Welsh's hands from underneath his body, and Duran then handcuffed Welsh. Because the video clearly refutes Welsh's contention that Deputy Duran "forced [his] body in an abnormal position," causing his alleged injuries, the Court recommends that the District Judge dismiss Welsh's force claim against Deputy Duran. *See, e.g., Tilmon v. Texas*, No. A–14–CA–465–SS, 2015 WL 1292252, at *5 (W.D. Tex. Mar. 23, 2015) (concluding detainee failed to allege excessive force where his "version of events of the [incident] [was] clearly refuted by the video evidence").

Regarding Welsh's claim against Deputy Martinez, however, the District Judge should require an answer. Unlike Welsh's claim against Deputy Duran, the video evidence does not plainly refute Welsh's claim against Martinez.[14] Welsh asserts that Deputy Martinez engaged in the same acts as Deputy Duran—he "press[ed] down on [him] hard several times over and over trying to force [him] on the ground." Questionnaire 9. Welsh contends that Deputy Martinez "forced [his] body in an abnormal position . . . caus[ing] [him] sever[e] pain in [his] lower abdominal area." *Id.* According to Welsh, Deputy Martinez took these actions after he was no

---

[14] Substantial portions of the video are obscured by a wall and/or bodies, making it impossible for the Court to conclusively observe Welsh's and Deputy Martinez's actions.

longer resisting. *Id.* The Court briefly analyzes the *Kingsley* factors in support of its determination.

Initially, the Court observes that video footage from the incident shows Welsh not only refusing to turn over his property box but also refusing to relinquish control of his hands. Further, Welsh concedes that he defied officers' orders to "give up the property." Questionnaire 12. Such defiance justified the use of some degree of force by Deputy Martinez. *See, e.g.*, *Calhoun v. Wyatt*, Civil Action No. 6:11cv4, 2013 WL 1882367, at *6 (E.D. Tex. May 2, 2013) (noting that inmate's refusal to obey orders "set the stage for the use of force"). Disobeying orders poses a threat to the order and security of an institution, despite Welsh's contention that he was not a threat because he "was in a secure room." Questionnaire 9; *see Minix v. Blevins*, Civil Action No. 6:06cv306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007) (recognizing that even where prisoner believes an order to be unjustified or improper, such belief does not give him the right to disobey at his whim); *Rios v. McBain*, No. Civ.A. 504CV84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell"), *R. & R. adopted by* 2005 WL 1026192 (E.D. Tex. Apr. 28, 2005). As such, a reasonable officer could believe that some use of force was objectively reasonable due to the threat presented by Welsh's refusal to comply. Thus, the fifth *Kingsley* factor (i.e., the threat to institutional order reasonably perceived by the officer) weighs in favor of finding that Deputy Martinez's alleged use of force was objectively reasonable. *See Kingsley*, 576 U.S. at 397.

The first and sixth *Kingsley* factors (i.e., the relationship between the need for the use of force and the amount of force used, and plaintiff's active resistance) weigh in Deputy Martinez's favor. *See id.* The authenticated video footage shows that, upon lowering Welsh to the ground,

Deputy Martinez and the other officers involved used force because Welsh refused to relinquish his hands. Deputy Martinez discontinued the use of force immediately after cuffing. Under the circumstances, the Court cannot conclude that Deputy Martinez used force that was beyond what was needed, particularly in light of Welsh's active resistance.[15]

In contrast, the third and fourth *Kingsley* factors (i.e., any effort made by the officer to temper or limit the amount of force, and the severity of the security problem at issue) weigh in Welsh's favor. Welsh asserts that Deputy Martinez "forced [his] body in an abnormal position . . . caus[ing] [him] sever[e] pain in [his] lower abdominal area." Questionnaire 9. As a result of the force, Welsh claims he suffered pain, a tear in his bladder, "internal bleeding," and blood in his urine.[16] *Id.* at 13; Am. Compl. 5 ¶ 6. The Court cannot determine, based on the video footage, what steps, if any, Deputy Martinez took to temper the amount of force used. Moreover, although Welsh refused to relinquish control of his hands, his allegation that Deputy Martinez did not command him to submit to handcuffs but instead "forced [his] body in an abnormal position" sufficiently suggests, at least for screening purposes, that the force was "excessive in relation to [the] purpose" of handcuffing him and may have been applied wantonly. *Kingsley*, 576 U.S. at 398; *see, e.g., Ryals v. El Paso Cty.*, No. EP–13–CV–289–PRM, 2015 WL 3540951, at *5–6 & n.10 (W.D. Tex. June 3, 2015) (finding detainee's claim that defendants "slammed him against a wall and a bench more than once and twisted his handcuffs causing him pain and injury" stated

---

[15] Welsh claims that neither Deputy Martinez nor any other officer ordered him "to stand up or lie down or submit to cuffs," or give "any other orders." Questionnaire 9, 12. The Court accepts as true Welsh's allegation because the video does not have sound. The Court notes, however, that the video plainly shows Welsh rebuffing officers' attempts to handcuff him. Welsh held his hands close to his body and, as officers attempted to move his hands to his back, Welsh physically resisted. Thus, the video evidence refutes Welsh's contention that Deputy Martinez used force after Welsh stopped resisting. Questionnaire 9.

[16] The records show that on January 26, 2018—the same day as the force incident—Jail officials treated Welsh for a urinary tract infection after he reported blood in his urine. Welsh denies this diagnosis, and claims that medical personnel diagnosed him as having a "tear in [his] bladder." Questionnaire 13.

sufficient claim for excessive force, particularly where detainee's claimed injuries suggested significant force was used).

Ultimately, however, it is the second *Kingsley* factor (i.e., the extent of plaintiff's injury) that resolves this question in Welsh's favor. Although no particular "quantum of injury" is required (*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)), the extent of injury is an important factor courts assess in determining whether the amount of force used on a pretrial detainee was reasonable. *See Kingsley*, 576 U.S. at 397. Courts consistently dismiss cases where the complaint alleges nothing more than de minimis injury. *See, e.g.*, *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997) (affirming district court's dismissal of plaintiff's claim for excessive force where injury consisting of "a sore, bruised ear lasting for three days" was de minimis); *Langley v. Bowman*, CIVIL ACTION NO. 16-1607, 2016 WL 6477036, at *8 (E.D. La. Aug. 8, 2016) (explaining that plaintiff's "minor and very short-term injuries," including pain and arm numbness for a few minutes, were de minimis), *R. & R. adopted by* 2016 WL 6441288 (E.D. La. Nov. 1, 2016).

As discussed above, Welsh alleges he suffered pain that lasted for several weeks, a tear in his bladder, "internal bleeding," and blood in his urine. Questionnaire 13; Am. Compl. 5 ¶ 6; *see also* Questionnaire 13 (asserting that he "asked for a week strait [sic] for ibuprofen for pain and was given ibuprofen . . . by several different Jail Officers"). Unlike the foregoing authority, Welsh's claimed injuries are more than de minimis and, if taken as true, at least support the plausible conclusion that, for purposes of screening, the force Deputy Martinez used was excessive. *See, e.g.*, *Drumm v. Valdez*, Civil Action No. 3:16-CV-3482-M-BH, 2019 WL 7494443, at *5 (N.D. Tex. Dec. 3, 2019) (concluding that detainee's excessive force claim survived screening in part because "the extent of [detainee's] alleged injuries further suggest[ed]

that more than a de minimis amount of force was used by these defendants"), *R. & R. adopted by*

2020 WL 85163 (N.D. Tex. Jan. 6, 2020); *Ryals*, 2015 WL 3540951, at *6 n.10.

In sum, weighing the factors set forth in *Kingsley*, particularly the physical injury

allegedly sustained and the Court's inability to determine whether Deputy Martinez tempered the

amount of force used, states a constitutional excessive force claim against Deputy Martinez

sufficient to survive preliminary screening. Deputy Martinez should therefore be required to

answer.

> ### D. Welsh has not pleaded a cognizable Fourth Amendment claim based on his allegation that Defendants Diaz, Martinez, and Does confiscated his legal papers for three days (Count IV).

Welsh contends that on January 26, 2018, Defendants Diaz, Martinez, and "Unknown"

confiscated his legal papers in violation of the Fourth Amendment.[17] Am. Compl. 13 ¶ 17. Welsh

acknowledges, however, that Defendants returned his papers approximately three days later, on

January 29. Questionnaire 14.

The Supreme Court has explicitly held that "the Fourth Amendment proscription against

unreasonable searches *does not apply within the confines of the prison cell*." *Hudson v. Palmer*,

468 U.S. 517, 526 (1984) (emphasis added); *see Gill v. Neaves*, No. SA–82–CA–582, 1986 WL

15688, at *4 (W.D. Tex. Aug. 5, 1986) (concluding that holding in *Hudson* applies to pretrial

detainees). In *Hudson*, the Supreme Court reasoned that "[t]he recognition of privacy rights for

prisoners in their individual cells simply cannot be reconciled with the concept of incarceration

and the needs and objectives of penal institutions." 468 U.S. at 526. Logically, the primary place

"inmates can conceal weapons, drugs, and other contraband is in their cells . . . [and] [u]nfettered

---

[17] To the extent Welsh asserts that Defendant Diaz denied him access to his legal paperwork in violation of his due process rights, the Court addresses such claim in Section II.E. below. *See* Am. Compl. 5–6 ¶ 7, 14 ¶ 18 (alleging, inter alia, that Defendant Diaz violated his substantive due process rights by placing him in a holding cell for three days without access to certain items, including legal papers).

access to these cells by prison officials . . . is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained." *Id.* at 527. Such basic security concerns justify these types of searches and seizures, which are "matter[s] lodged in the sound discretion of the institutional officials." *Block v. Rutherford*, 468 U.S. 576, 591 (1984). As such, detainees cannot "make a claim of unreasonable search and seizure under the Fourth Amendment." *Gross v. Norman*, 576 F. App'x 318, 320 (5th Cir. 2014) (rejecting detainee's claim that defendants' confiscation and destruction of his property violated the Fourth Amendment). The Court therefore recommends dismissal of Welsh's claim that Defendants illegally confiscated items from his cell. *See Rickerson v. Rust*, CIVIL ACTION NO. 5:17cv172, 2019 WL 8500865, at *9 (E.D. Tex. Nov. 13, 2019) (dismissing prisoner's claim that seizure of legal papers violated his Fourth Amendment rights because prisoners have no expectation of privacy in their cell), *R. & R. adopted by* 2020 WL 633582 (E.D. Tex. Feb. 11, 2020).

**E. The District Judge should require answers based on Welsh's claim that Defendants placed him in a holding cell and subjected him to punitive conditions in violation of his due process rights, but should otherwise dismiss Welsh's claim based on the conditions of his confinement (Count V).**

Welsh alleges that between January 26 and 29, 2018, Defendants Maddox and Diaz placed him in a holding cell "without any procedural due process." Questionnaire 16; Am. Compl. 5 ¶ 7. During this time, Welsh claims that Defendants Maddox and Diaz violated his due process rights by requiring him to eat food loafs, as well as denying him the following: (1) toothbrush and toothpaste; (2) stationary; (3) mattress; (4) recreation time; (5) use of the phone; and (6) access to his legal work.[18] Am. Compl. 5–6 ¶ 7, 14 ¶ 18. The Court understands Welsh as alleging claims

---

[18] Welsh also claims the foregoing denials violated the "Texas Administration Code 283.1(4) Texas Commission of Jail Standards." Am. Compl. 14 ¶ 18. Violations of state law and Jail policy, standing alone, cannot form the basis of a § 1983 claim. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (jail policy); *Giovanni v. Lynn*, 48 F.3d 908, 912–13 (5th Cir. 1995) (state law).

based on a violation of his procedural due process rights as well as subjection to unconstitutional conditions of confinement in violation of his substantive due process rights. *See* Questionnaire 15–19.

    *1. Procedural Due Process Rights*

    Welsh claims that Defendants subjected him to punitive conditions without due process. *See id.* As a pretrial detainee, Welsh's claim is governed by the Fourteenth Amendment, which prohibits punishment without due process of law. *Bell v. Wolfish*, 441 US. 520, 535–36 (1979); *see Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (explaining that a pretrial detainee's rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"). Before imposing punishment for a disciplinary infraction, a detainee is entitled to certain procedural protections. *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974).

    Welsh alleges that Defendant Diaz ordered him placed in the holding cell, and she and Defendant Maddox denied him certain items and privileges over a three-day span. Am. Compl. 5–6 ¶ 7, 14 ¶ 18; Questionnaire 15–19. Welsh claims that he did not receive due process prior to the placement. Questionnaire 16. He asserts that Defendants placed him in the holding cell as unconstitutional punishment. *Id.* at 16–19. Based on Welsh's factual allegations, i.e., deprivation of certain items arguably fundamental to daily living, subjection to deprivations without procedural due process, and Defendants' alleged intent to punish Welsh via the transfer, the Court finds that Welsh has stated sufficient facts to survive screening and recommends that the District Judge require Defendants Diaz and Maddox to file a responsive pleading with respect to this claim. *See, e.g., Pembroke v. Wood Cty.*, 981 F.2d 225, 229 (5th Cir. 1993) (explaining that the "use of punitive isolation without affording due process is unacceptable and violates the 14th Amendment"); *Lombard v. Gusman*, Civil Action No. 07-5288, 2008 WL 2704527, at *2–3 (E.D.

La. July 3, 2008) (concluding detainee's claim that defendants "placed [him] in a holding cell for three days and subjected [him] to various deprivations as punishment for a disciplinary infraction" stated facts sufficient to survive judgment on the pleadings); *Jones v. Brown*, 300 F. Supp. 2d 674, 678–79 (N.D. Ind. 2003) (finding detainee's claim that defendants placed him in segregation without a hearing survived screening).

 *2. Conditions of Confinement*

 To the extent Welsh challenges the conditions to which Defendants allegedly subjected him between January 26 and 29, 2018, as a substantive due process violation, he has failed to state a viable claim.  The Constitution "prohibits the imposition of conditions of confinement on pretrial detainees that constitute 'punishment.'"  *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (quoting *Bell*, 441 U.S. at 535).  Where the challenged "restriction or condition is not reasonably related" "to a legitimate governmental objective," courts "may infer" a punitive purpose.  *Bell*, 441 U.S. at 539.  Nevertheless, de minimis restrictions do not amount to punishment, no matter Defendants' intent.  *See id.* at 539 & n.21 (defining "punishment" to include "arbitrary or purposeless" action but noting that there is "a *de minimis* level of imposition with which the Constitution is not concerned"); *Hamilton*, 74 F.3d at 106 (affirming dismissal of detainee's conditions of confinement claim, where he was subjected to a "*de minimis* level of imposition" such that the conditions did not amount to punishment).

 The conditions Welsh alleges Defendants subjected him to—placement in a holding cell for three days without certain hygiene items, a mattress or "proper bedding," stationary, recreation and phone time, and access to legal work as well as requiring him to eat food loaf (Am. Compl. 5 ¶ 7)—are de minimis restrictions that cannot amount to punishment, no matter Defendants' intent,

particularly where Welsh alleges no direct, serious harm, or risk of harm, as a result.[19] *See, e.g.*, *Bell*, 441 U.S. at 539 n.21 (explaining that the Constitution is not concerned with de minimis restrictions); *Hamilton*, 74 F.3d at 106 (affirming dismissal of detainee's conditions of confinement claim based on purported denial of "visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period," concluding that "none of these allegations give rise to a constitutional claim"); *Marino v. Cunnion*, No. A–11–CV–587–LY, 2013 WL 33625, at *6–7 (W.D. Tex. Jan. 2, 2013) (dismissing on summary judgment detainee's claim that over twenty-nine days he was only permitted to exercise two or three times, where he failed to plead facts showing "that denying him exercise during his month of incarceration would or did lead to an injury to his physical health"); *Walton v. Topps*, Civil Action No. 12–0931, 2012 WL 3947629, at *8 (E.D. La. July 23, 2012) (explaining that "[t]he provision of bedding is within those matters committed to prison administrators' sound discretion" and noting that "federal courts have repeatedly held that the deprivation of bedding for a limited period of time is not per se unconstitutional"); *Von Minden v. Jankowski*, No. A-06-CA-823 LY, 2007 WL 1958615, at *5 (W.D. Tex. July 3, 2007) ("The Court finds that Plaintiffs' claims regarding the denial of one visitation session qualifies as a de minimis level of imposition which does not rise to the level of a constitutional violation." (footnote omitted)), *R. & R. adopted by* 2007 WL 9701717 (W.D. Tex. July 19, 2007), *aff'd*, 268 F. App'x 352 (5th Cir. 2008); *Hernandez v. City of Farmers Branch*, No. 3:01–CV–1184–G, 2002 WL 66162, at *4 (N.D. Tex. Jan. 10, 2002) (recommending dismissal of detainee's claim that defendants denied him, inter alia, "hygiene items and showers" for six

---

[19] Welsh generally contends that he was "strip[ped] . . . of [his] rights and the very dignity of a human being" and that the deprivations caused "mental torture" and "inflicted . . . severe mental sickness." Questionnaire 18–19. He does not, however, allege any specific harm with respect to the purported deprivations. *See id.*

days, finding that such allegations were "insufficient to state a claim of constitutional dimension[]").

### F. Welsh has not asserted a viable substantive due process claim based on the January 31, 2018, disciplinary proceeding (Count VI).

Welsh asserts that on January 31, 2018, the Jail disciplinary committee (consisting of Defendants Thompson and Diaz) found him guilty of, and disciplined him for, "Sexual Solicitation Disciplinary infraction A-8" after he commented to Deputy Duran, "You look sexy using force." Am. Compl. 6 ¶ 8; Questionnaire 25. As a result, he lost thirty days of recreation, television, commissary, and telephone privileges and was placed in segregation. Am. Compl. 6 ¶ 8; Questionnaire 25. According to Welsh, the guilty finding violated his substantive due process rights because he has "a mental disease that compels [him] beyond [his] free will to act out sexually," as evidenced by a state court's finding that he is a sexually violent predator subject to civil commitment. Questionnaire 25. Stated differently, Welsh claims he "was punished for an act [he] [has] no control over" in violation of his constitutional rights. *Id.* at 25–26. Welsh also alleges that the loss of phone and television privileges violated his First Amendment rights. *Id.* at 26; Am. Compl. 6 ¶ 8. Welsh attributes these violations to Defendants Maddox, Thompson, and Diaz, as well as to Lamb County. Am. Compl. 15 ¶ 19.

Welsh does not dispute that he received notice and a hearing regarding the disciplinary charge. Questionnaire 25. Further, he does not deny that he committed the charged offense. *See id.* at 28 ("I was very sorry for the words I spoke but I could not help myself when I became sexually aroused."). Instead, Welsh argues that Defendants violated his due process rights by finding him guilty of, and imposing punishment for, an action he asserts he has "no control over." *Id.* at 26.

"Pretrial detainees are not immune from prison disciplinary actions." *Guillory v. Neustrom*, Civil Action No. 09–0244, 2009 WL 2406302, at *3 (W.D. La. Aug. 3, 2009); *see Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999) (providing that "it is permissible to punish a pretrial detainee for misconduct while in pretrial custody . . . after affording the detainee some sort of procedural protection"). Welsh's allegation that Defendants placed him in isolation and restricted privileges after conducting a disciplinary hearing, without more, does not state a Due Process Clause violation.[20] *See, e.g.*, *Bell*, 441 U.S. at 539 (stating that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment" (internal quotation marks omitted)); *Walker v. Clark*, 2:17-CV-221-D, 2019 WL 5685340, at *7 (N.D. Tex. Feb. 25, 2019) (recommending dismissal of detainee's claim that defendants violated his due process rights by disciplining him because a "verbal reprimand and commissary and recreation restrictions do not implicate due process concerns"), *R. & R. adopted by* 2019 WL 5685165 (N.D. Tex. Nov. 1, 2019).

Welsh also cannot state a First Amendment claim based on the temporary loss of phone and television privileges. "Prisoners have no right to unlimited telephone use. Instead, a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution." *Young v. LeBlanc*, CIVIL ACTION NO. 19-13516, 2020 WL 3421132, at *20 (E.D. La. May 7, 2020) (internal quotation marks omitted), *R. & R. adopted by* 2020 WL 3415800 (E.D. La. June 22, 2020). Defendants restricted Welsh's privileges after conducting a

---

[20] In Count 12 of his Amended Complaint, Welsh alleges that Lamb County, through its policy makers Defendants Maddox, Thompson, and Diaz, violated his constitutional rights by disciplining him and thereafter changing the operative disciplinary infraction. To the extent Welsh attempts to assert a claim based on a policy or practice, it must fail. Because the Court has found that Welsh failed to plead a constitutional claim regarding the disciplinary action and subsequent change, Welsh cannot state a claim against Lamb County. *Hicks-Fields*, 860 F.3d at 808.

hearing and finding him guilty of committing a disciplinary infraction—i.e., restrictions based on the need to maintain order and enforce institutional rules. Thus, Welsh has failed to state a claim.

### G. Welsh has not stated a viable due process claim based on the purported change to the January 31, 2018, disciplinary charge (Count VII).

Welsh avers that on February 5, 2018, Defendants Maddox, Thompson, and Diaz violated his procedural and substantive due process rights by changing his disciplinary infraction "from A-8 sexual solicitation to A-47 disrespect of staff." Am. Compl. 7 ¶ 9. Although unclear, Welsh seems to contend that when Defendants initially charged him with a violation of A-8, they permitted him the opportunity to plead guilty to the infraction in exchange for a reduced punishment.[21] *See id.*; Questionnaire 29. When Defendant Maddox changed the applicable charge from a violation of A-8 to A-47,[22] however, Welsh claims that he did not receive that same opportunity, as provided for by the Texas Administrative Code and Lamb County policy. *See* Am. Compl. 7 ¶ 9, 16–17 ¶ 20; Questionnaire 29. Welsh concedes, however, that despite the change, his punishment remained the same—i.e., he received no additional punishment. Questionnaire 30.

Initially, the Court observes that Welsh bases his claim on Defendants' purported violations of the Texas Administrative Code and Lamb County policy. *See id.* at 29. That is, Welsh alleges that he was entitled to a certain procedure under state law and Jail policy—not the Constitution. *Id.* Violations of state law and Jail policy, standing alone, cannot form the basis of a § 1983 claim. *See Myers*, 97 F.3d at 94; *Giovanni*, 48 F.3d at 912–13. "[W]here a liberty or property interest is infringed, the process which is due under the United States Constitution is that measured by the due process clause, not that called for by state regulations." *Giovanni*, 48 F.3d at 912. "Mere

---

[21] The authenticated records support this interpretation. Welsh filed a grievance on February 6, 2018, saying that he "was offered to waive the A-8 Sexual Solicitation to plea for 15 days."

[22] The authenticated records indicate that Defendant Maddox modified the charged infraction in response to an appeal Welsh filed.

failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process." *Id.* Similarly, "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers*, 97 F.3d at 94. For this reason alone, the District Judge should dismiss his claim.

To the extent Welsh claims that the lack of a second opportunity to plead guilty and have a second hearing violated his due process rights, he has likewise failed to state a viable claim. With respect to disciplinary hearings, detainees are "entitled to the same due process protections as convicted prisoners at a disciplinary hearing." *Frank v. Larpenter*, No. 99-31242, 2000 WL 1598076, at *3 (5th Cir. Oct. 3, 2000). Where a detainee violates prison policy or commits illegal acts while detained, jail officials may "impose reasonable punishment to enforce reasonable disciplinary requirements so long as the punishment is not for prior unproven conduct"—i.e., the original crime for which the detainee is incarcerated. *Id.* at *2 (citing *Collazo-Leon v. U.S. Bureau of Prisons*, 51 F.3d 315, 318 (1st Cir. 1995)). To prevail on a due process claim, a plaintiff must show that defendants' conduct constituted "such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." *Wolff*, 418 U.S. at 571.

Welsh acknowledges that he received a hearing with respect to the underlying conduct— stating that Deputy Duran "look[ed] sexy using force." Questionnaire 25. Even if Welsh did not receive notice and a second hearing on the modified disciplinary charge—disrespecting staff under A-47—the charge was based *on the same conduct* and subject to the same defense. Moreover, Welsh's punishment did not change, nor does he claim that the thirty-day restriction was extended (e.g., that the thirty-day time period started over when Defendant Maddox allegedly modified the charge). *Id.* at 29–30. Because Welsh received adequate process and was not prejudiced by any

change in the disciplinary infraction, he cannot state a procedural due process claim. *See, e.g.*, *Dixon v. Hastings*, 202 F. App'x 750, 752 (5th Cir. 2006) (affirming dismissal of prisoner's claim that "he did not receive adequate notice of the ultimate charge, which, prior to his disciplinary hearing, was changed," where "*both* charges were based on the same facts and subject to the same defense" and prisoner was not prejudiced by any purported change).

Welsh has also failed to state a cognizable substantive due process claim. As discussed in Section II.F. above, Welsh's alleged placement in isolation (after a hearing) and the loss of privileges as a result of a rules violation are constitutionally permissible. *See, e.g.*, *Bell*, 441 U.S. at 539 (stating that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment" (internal quotation marks omitted)). Thus, he cannot state a claim.

### H. Welsh's claim that Defendants denied him access to a phone so that he could post bond should be dismissed (Count VIII).

Welsh asserts that while he was serving the thirty-day phone restriction for the disciplinary infraction (beginning January 31, 2018), Defendants Thompson and Diaz denied him access to the phone which prevented him from posting bond. Am. Compl. 8 ¶ 10. Welsh claims that a family member, Lonnell Hanks, would have posted bond, but "he need[ed] to inform her as soon as possible." *Id.* Welsh alleges that on January 27, January 30, February 2, February 7, and February 10, 2018, he asked Defendant Diaz to use the phone, while on January 30 and February 9 he made the same request to Defendant Thompson. Questionnaire 31. According to Welsh, Defendants Diaz and Thompson denied those requests. *Id.* Welsh concedes that had he posted bond, he would have returned to the Texas Civil Commitment Center, but he states that he wished to return so he could use the law library. *Id.* at 30–31. Welsh also seems to attribute the purported constitutional violation to a Lamb County policy. *See* Am. Compl. 18 ¶ 21.

"[Welsh's] claim concerning interference with his ability to post bail falls under the Fourteenth Amendment umbrella that protects [Welsh's] right to post-arrest procedural guarantees such as bail." *Simpson v. Gallant*, 223 F. Supp. 2d 286, 295 (D. Me. Sept. 25, 2002) (internal quotation marks omitted).   As discussed in Section II.G above, Jail officials implemented the phone restriction after conducting a hearing in conjunction with enforcing prison rules.   *See Bell*, 441 U.S. at 539 (stating that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment" (internal quotation marks omitted)).   Welsh does not dispute that Jail officials permitted him phone privileges before and after the thirty-day restriction.   Questionnaire 32. Moreover, Welsh does not plead facts demonstrating that Jail officials denied him the opportunity to send legal or personal mail. *See id.* at 25–27.   That is, even during his disciplinary segregation he retained the ability to use the mail to reach individuals (including his mother or attorney) to help him arrange bail.   As such, he fails to state an actionable Fourteenth Amendment claim. *See, e.g.*, *Robertson v. Coahoma Cty.*, No. 2:07CV78-SA-SAA, 2008 WL 3334091, at *5–6 (N.D. Miss. Aug. 6, 2008) (concluding that detainee failed to state viable claim sufficient to survive summary judgment based on the denial of access to a phone to make bail, where detainee conceded he had access to mail); *Simpson*, 223 F. Supp. 2d at 296 (dismissing on summary judgment detainee's claim that defendants denied him access to a phone to post bail while in disciplinary segregation, noting that detainee "had at least a month prior to his segregation where his phone access was not restricted" and also retained the ability to mail letters).   Finally, the Court notes that even if Welsh had posted bond during the thirty-day restriction, he would not have been released into the free world but instead would have returned to civil commitment. *See*

31

Questionnaire 31. For these reasons, the Court recommends that the District Judge dismiss Welsh's claim.[23]

**I.  Welsh has failed to state a claim of constitutional dimension based on purported inflated phone time and commissary rates (Counts IX and X).**

According to Welsh, Lamb County maintains exorbitant rates for commissary items and phone time. Am. Compl. 9 ¶¶ 11, 12, 19–20 ¶¶ 22–23. Welsh claims that the expensive phone rates ($1.00 per minute) violate his First Amendment right to speech. *Id.* at 9 ¶ 11. Welsh estimates, however, that he was able to place approximately seventy-five phone calls during his November 28, 2017, to June 20, 2018, detention at the Jail, in spite of the alleged expensive rates. Questionnaire 32. Further, Welsh contends that because of the purported inflated commissary rates, he was unable to purchase stamps, food, thermals, and games. *Id.* at 33. The commissary rates, Welsh argues, violate his right to acquire property. Am. Compl. 9 ¶ 12.

"The law is clear that inmates have no constitutionally protected interest in purchasing goods[, including commissary and phone time,] through the prison commissary at the cheapest price possible." *McGarrah v. Williams*, No. 3:14–CV–1119–M, 2014 WL 4696015, at *2 (N.D. Tex. Sept. 18, 2014). In evaluating a detainee's claim regarding the high prices of phone calls and commissary items, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Joseph v. Barthelemy*, No. 94-30157, 1996 WL 460003, at *2 (5th Cir. July 30, 1996) (quoting *Bell*, 441 U.S. at 535). "[A] condition is not tantamount to punishment merely because it interferes with a detainee's desire to live more comfortably." *Id.* (affirming dismissal of detainee's claim that institution charged "high prices for telephone calls and commissary items," finding that such a complaint amounted to an interference with desire to live comfortably).

---

[23] Any claim Welsh alleges against Lamb County based on a policy should likewise be dismissed because Welsh has not pleaded facts supporting an underlying constitutional violation. *Hicks-Fields*, 860 F.3d at 808.

*1. Phone Time*

The mere fact that the Jail allegedly charged what Welsh believes to be high phone-time

rates does not violate the Constitution. *See, e.g.*, *Daniels v. Bowles*, No. Civ.A.3:03–CV–1555–

D, 2004 WL 2479917, at *4 (N.D. Tex. Nov. 2, 2004) ("[O]vercharging for commissary items

does not independently violate any constitutional right and thus fails to state a claim under 42

U.S.C. § 1983."). Welsh therefore cannot state a claim based on the alleged high prices for phone

calls.

To the extent Welsh claims that the expensive phone rates restricted his ability to contact

family and friends in violation of the First Amendment, he has likewise failed to state a claim.

"[L]awful incarceration results in the necessary limitation of many privileges and rights of the

ordinary citizen." *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976). "Prisoners have no right to

unlimited telephone use. Instead, a prisoner's right to telephone access is subject to rational

limitations in the face of legitimate security interests of the penal institution." *Young*, 2020 WL

3421132, at *20 (internal quotation marks omitted); *see also Holloway v. Magness*, 666 F.3d 1076,

1079–80 (8th Cir. 2012) ("Just as [institution] had no First Amendment obligation to provide any

telephone service, it had no obligation to provide that service at a particular cost to users."").

Moreover, Welsh does not claim that the phone rate deprived him of the ability to place calls

altogether. *See Whitenack v. Armor Med.*, No. 13–CV–2071 (SJF)(ARL), 2013 WL 2356110, at

*4 (E.D.N.Y. May 28, 2013) (quoting *Johnson v. State of California*, 207 F.3d 650, 656 (9th Cir.

2000)) (dismissing at screening detainee's claim that institution's phone rates were overpriced in

part because he did not "allege any facts to support a reasonable inference that the telephone rates

charged are 'so exorbitant as to deprive prisoners of phone access altogether'"). Indeed, Welsh

estimates that he placed seventy-five phone calls over an approximate seven-month time period. Questionnaire 32.

Having found that Welsh has not alleged a constitutional violation, any claim Welsh attempts to assert against Lamb County based on an illicit policy should be dismissed.[24] *See Hicks-Fields*, 860 F.3d at 808.

*2. Commissary Items*

Like phone rates, any purported overcharging of commissary items does not, standing alone, violate the Constitution. *See Joseph*, 1996 WL 460003, at *2; *McGarrah*, 2014 WL 4696015, at *2. Thus, this Court need only consider whether Welsh's alleged inability to purchase food, thermals, and games constituted "deprivation[s] of the necessities of life." *McGarrah*, 2014 WL 4696015, at *2 (quoting *Daniels*, 2004 WL 2479917, at *4). The Court concludes it did not.

Welsh asserts that he wanted to purchase snack items (soups, chips, candy, pastries, etc.), thermals, and games because "[i]t is a comfort for a person to be able to enjoy the different amenities of civilization when you are stuck in a dungeon waiting for the fate of life to be cast upon you." Questionnaire 33. That is, Welsh desired to live more comfortably. *Joseph*, 1996 WL 460003, at *2. Welsh pleads no facts demonstrating that the inability to purchase food or thermals otherwise deprived him of life's necessities. *See* Questionnaire 33–34 (claiming generally that he needed to purchase food "because they starve you at the county jail" and thermals "because it is freezing cold" but alleging no specific facts regarding these purported deprivations). Thus, the District Judge should dismiss any attempted policy claim against Lamb County. *See Hicks-Fields*, 860 F.3d at 808.

---

[24] To the extent Welsh claims that the high cost of stamps violated his First Amendment right to communicate with his family, he likewise cannot state a claim. *See* Questionnaire 33. Welsh does not assert that the cost completely prevented him from writing letters. *See id.* at 32–34.

**J.  Welsh has not pleaded adequate facts demonstrating that Lamb County's purported denial of the ability to purchase books violated his First Amendment rights  (Count XI).**

Welsh alleges that Lamb County, "by its policy practice and culture," denied him "the right to order a book from an outside vender [sic]." Am. Compl. 9 ¶ 13.  Specifically, Welsh asserts that he was not able to purchase a dictionary, which he "needed so [he] could express [him]self more fully in [his] endeavors at the law," as well as books that would help him "to escape the dungeon they placed [him] in." *Id.*; Questionnaire 34.  Welsh argues that the denial of these books violated his First Amendment rights. Am. Compl. 20–21 ¶ 24.

Welsh attempts to hold Lamb County vicariously liable for the actions of its employees. *See id.* at 9–10 ¶ 13.  For this reason alone, his claim should be dismissed. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (explaining that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").

To the extent Welsh attempts to assert a policy claim against Lamb County, his claim should also be dismissed.  An underlying constitutional violation is a necessary prerequisite to pleading a successful municipal liability claim. *Hicks-Fields*, 860 F.3d at 808.  Welsh has not pleaded facts showing such a violation.  The Court interprets Welsh's claim regarding the denial of a dictionary as one alleging a denial of access to the courts.[25]  *See* Questionnaire 34 ("When I wrote motions I had to search unendingly to find a word or a like word that was spelled in my paper work.  So that limited my ability to function in the way I intended to convey my expression and ideas in the law.").  Welsh pleads no facts demonstrating that the lack of a dictionary prejudiced his position as a litigant. *See Lewis*, 518 U.S. at 356.  Therefore, his claim fails.

---

[25] Although the Court does not base its decision on such information, it notes that the authenticated records indicate that the Jail library contained a dictionary.  Moreover, Welsh apparently wanted to order a dictionary from Amazon.

Similarly, Welsh's allegation that the lack of certain books (editions in a "series") fails to state a claim of constitutional dimension. Welsh does not claim that Lamb County prohibited him from ordering all books, nor does he contend he lacked access to all books. *See* Questionnaire 34 (acknowledging that he obtained some books in the library, but arguing that he wanted to purchase additional books to complete a series); Am. Compl. 9–10 ¶ 13 (alleging only that he "specifically request[ed] a dictionary to help facilitate his defense" and wanted to "order literature to help foster and promote the freedom of thought"). Welsh's vague and conclusory allegations wholly fail to establish a violation of his First Amendment rights. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims).

Because Welsh has not pleaded facts alleging an underlying First Amendment violation, he cannot state a claim against Lamb County based on an unconstitutional policy. *Hicks-Fields*, 860 F.3d at 808. The Court therefore recommends dismissal of his claim.

### III.    Recommendation

For these reasons, the undersigned recommends that the United States District Court dismiss with prejudice Welsh's claims related to: (1) denial of access to the law library: (2) excessive force against Defendants Misty Diaz and Denise Duran; (3) the confiscation of legal papers in violation of the Fourth Amendment; (4) substantive due process violation based on placement in a holding cell for three days; (5) due process violations based on a January 31, 2018, disciplinary proceeding and subsequent change in disciplinary charge; (6) denial of access to a phone to post bond; (7) the alleged excessive charges for phone time and commissary items; (8) purported violations of his First Amendment based on Lamb County's denial of a dictionary and certain books; and (9) all policy claims against Lamb County.

As to the remaining claims against (1) Deputy Jonathan Martinez for excessive use of force and (2) Sheriff Gary Maddox and Jail Administrator Misty Diaz for alleged due process violations via the imposition of punitive conditions for three days, the undersigned recommends that the United States District Court order Defendants to answer or otherwise plead to the claims.

## IV.    **Right to Object**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August __31__, 2020.

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**