UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH,
Institutional ID No. 27818

                              Plaintiff,

v.                                              No. 5:20-CV-00024-H

LAMB COUNTY, *et al.*,

                              Defendants.

## ORDER ACCEPTING IN PART THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. (Dkt. No. 22.)  Plaintiff filed objections with a request to amend his complaint (Dkt. No. 25), a motion to compel service of process (Dkt. No. 28), and a motion to supplement his complaint (Dkt. No. 29).  The Court conducted a de novo review of the record in this case and the relevant portions of the Magistrate Judge's report.  As explained below, the Court accepts the findings, conclusions, and recommendation of the United States Magistrate Judge.  Plaintiff's objections are overruled, except as noted below.  Plaintiff's request to amend his complaint in response to the findings and conclusions of the Magistrate Judge is granted in part and denied in part.  Finally, Plaintiff's motion to supplement his claims is denied without prejudice to his raising the new claims in a properly filed, separate civil-rights complaint.

## 1.    Plaintiff's Claims

Plaintiff is an experienced and determined litigant who has filed more than a dozen federal civil actions challenging various aspects of his confinement in different institutions

over the past several years. Plaintiff was a civil detainee in the Texas Civil Commitment Center when he filed this suit, proceeding pro se and *in forma pauperis*. His allegations, however, stem from his confinement as a pretrial detainee in the Lamb County Jail between November 27, 2017 and June 20, 2018.

He sues Lamb County Sheriff Gary Maddox, Jail Administrator Misty Diaz, and Chief Deputy Craig Thompson in their individual and official capacities. He sues Deputy Jonathan Martinez, Deputy Denise Duran, Doe Defendants, and Lamb County District Attorney Scott Say in their individual capacities. He also sues Lamb County under a municipal-liability theory for allegedly unconstitutional policies or practices related to his claims. Plaintiff organizes his amended complaint into 12 counts. He alleges that Defendants:

a. denied him law library access in violation of his First Amendment rights between January 1 and June 20, 2018 (Counts I and II);

b. used excessive force against him on January 26, 2018, in violation of his Fourteenth Amendment rights (Count III);

c. unconstitutionally seized his personal property, including his legal papers, from January 26–29, 2018, in violation of his Fourth Amendment rights (Count IV);

d. subjected him to unconstitutionally punitive conditions without due process in violation of his First and Fourteenth Amendment rights (Count V);

e. punished him for conduct (making sexually harassing comments) that he cannot be culpable for because his mental disease (the behavioral abnormality diagnosed as part of the finding that he is a sexually violent predator subject to civil commitment) compels him to act out sexually (Count VI);

f. changed the nature of his disciplinary charge, but not the punishment, without providing him a new hearing in violation of his due process rights (Count VII);

2

g.     denied him access to the phone (as part of the punishment for his disciplinary
       infraction), which prevented him from posting bond (Count VIII);

h.     charged excessive rates for telephone use and commissary items in violation
       of his First and Fourteenth Amendment rights (Counts IX and X);

i.     denied him the right to order books from outside vendors, as a matter of
       policy, in violation of his First Amendment rights (Count XI); and

k.     implemented conditions of confinement through policy, practice, and custom,
       that deprived him of his rights under the Privileges and Immunities Clause
       (Count XII).

## 2.     The Magistrate Judge's Findings, Conclusions, and Recommendation

The Magistrate Judge used a questionnaire to allow Plaintiff a chance to further

develop his claims and to assist in the judicial screening process. *See Watson v. Ault*, 525

F.3d 886, 893–94 (5th Cir. 1976). The Magistrate Judge also received and reviewed

authenticated records from Lamb County, including relevant videos, administrative

grievances, and internal reports. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir.

1991); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

After this screening, the Magistrate Judge recommended that two of Plaintiff's claims

should proceed to the next step in the litigation process. Specifically, the Magistrate Judge

recommended that Plaintiff's claims against Deputy Jonathan Martinez for excessive use of

force (Count III, in part), and against Sheriff Gary Maddox and Jail Administrator Misty

Diaz for alleged due process violations (Count V, in part) survive screening and that these

Defendants be ordered to answer or otherwise plead to the claims. The Magistrate Judge

recommended that the Court dismiss Plaintiff's other claims with prejudice.

3

**3.     Plaintiff's Objections**

Plaintiff filed objections totaling 157 pages with attachments. (Dkt. No. 25.) He also seeks leave to amend his complaint in response to the Magistrate Judge's recommendation. (*Id.*) And more recently, he filed a motion seeking leave to supplement his claims with over 60 pages of new, handwritten claims and over 280 pages of attachments. (Dkt. No. 29.)

**A.     Access-to-Courts Claims (Counts I and II)**

In Counts I and II, Plaintiff complains that between January 1 and June 20, 2018, Defendants Maddox, Thompson, Diaz, and Say denied him access to a law library. (Dkt. No. 8 at 4–5.) He asserts that this denial prejudiced him during his then-pending state criminal trial proceedings and two federal civil actions.

Plaintiff admits that he was originally provided court-appointed counsel in his state criminal proceedings, but he waived his right to court-appointed counsel and insisted on representing himself "because [he] knew [he] had to have an attorney or be allowed the law library" from previous experience. (Dkt. No. 18 at 2.) He also acknowledges that once he began representing himself, he was provided law library access in nearby Lubbock County. (*Id.*) He was returned to the Lamb County Jail when he was briefly represented by appointed counsel again. Then, when he again waived counsel and began representing himself, he was sent back to Lubbock County and given access to the law library there. (*Id.*)

The Magistrate Judge concluded that Plaintiff failed to state a cognizable constitutional claim based on the denial of law library access. (Dkt. No. 22 at 8–9.) Thus, the Magistrate Judge recommended that these claims (Counts I and II) be dismissed with prejudice. Specifically, the Magistrate Judge found that Plaintiff was represented by appointed counsel on his criminal charges, satisfying his right to access to courts. *See*

4

*Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding that "the fundamental constitutional right of access to the courts requires prison authorities to . . . provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law"). The Magistrate Judge also concluded that to the extent Plaintiff complains that he was denied access to the law library after he waived his right to counsel, he has similarly failed to state a claim that would entitle him to relief under Section 1983. This is because "a prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library." *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996); *see also White v. Longino*, 428 F. App'x 491, 491 (explaining that "[a] prisoner, who knowingly and voluntarily waives appointed representation by counsel, may not file a 42 U.S.C. § 1983 action asserting that he was denied the constitutional right to access to a law library in preparing a pro se defense in a criminal trial").

Plaintiff objects to the Magistrate Judge's conclusions and recommendation that these claims be dismissed. He "admits that . . . Judge Bryant makes a good point," but attempts to show that the Fifth Circuit's holding in *Degrate* should not apply to him because he now asserts that his decision to waive his right to appointment of counsel and represent himself in his criminal trial was not made knowingly, voluntarily, or intelligently. (Dkt. No. 25 at 30–31.) But his own attachments belie that assertion. Plaintiff submitted copies of the transcripts from two of his pretrial hearings where the state criminal trial court discussed his rights and the potential consequences of waiving them. (*See* Dkt. No. 25 at 67–81.)

The trial court admonished Plaintiff at length about the risks and potential pitfalls in choosing to represent himself. Relevant to the discussion here, the trial court told Plaintiff, "If you are incarcerated at any point from now until the beginning of the trial, your ability

5

to adequately prepare for your trial could be significantly hindered." (Dkt. No. 25 at 79.)
Plaintiff said he understood. (*Id.*) Among other admonishments, the trial court also told
Plaintiff, "If you choose to represent yourself then you are not entitled to have stand-by
counsel appointed to assist you." And Plaintiff responded, "I do understand that, yes, Your
Honor." (Dkt. No. 25 at 79.) The trial court warned Plaintiff about the dangers of self-
representation and twice expressed that Plaintiff's choosing to proceed pro se would be a
"mistake." (*Id.* at 80, 81.)

Plaintiff unequivocally stated that he understood all of the risks associated with self-
representation and that he was knowingly, voluntarily, and intelligently choosing that path.
(*Id.* at 80.) And the trial court initially agreed to allow him to represent himself. (*Id.* at 81.)
But moments later, the trial court withdrew its ruling and required Plaintiff's appointed
counsel to temporarily stay on the case to ensure Plaintiff's ability to access discovery. (*Id.*
at 84–85.) Later, however, Plaintiff was again permitted to represent himself.

The records provided by Plaintiff show that he was fully and repeatedly admonished
about the risks of self-representation, including the precise pitfalls he complains of here—the
potential of proceeding without access to a law library or stand-by counsel. He knowingly,
voluntarily, and intelligently made the choice to waive his right to representation by
counsel. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (defining a valid waiver as "an
intentional relinquishment of a known right or privilege"). Thus, he has not stated a claim
under Section 1983 for denial of access to a law library. Plaintiff's objection is overruled,
and the Court accepts the recommendation of the Magistrate Jude that this claim be
dismissed.

6

Additionally, Plaintiff alleges that his lack of access to a law library resulted in the dismissal of two pending civil-rights lawsuits before this Court—Nos. 5:17-cv-00083 and 5:18-cv-00020. The Magistrate Judge concluded that Plaintiff failed to identify "a nonfrivolous, arguable underlying claim that he has been unable to pursue," or an actionable claim that he lost because of the denial. *See Lewis v. Casey*, 518 U.S. 343, 353–57 (explaining that the actual-injury requirement is not satisfied by just any type of frustrated legal claim, but it requires demonstration of a nonfrivolous legal claim that has been frustrated or impeded).

The Magistrate Judge noted that No. 5:17-cv-00083 was dismissed because of Plaintiff's failure to amend his pleading in September 2017, several months before he complains that he was denied access to the law library. Moreover, to the extent Plaintiff complains that he was unable to pursue an appeal from that dismissal, the Magistrate Judge noted that Plaintiff had access to the law library in Lubbock County during the original briefing period set by the Fifth Circuit. And in No. 5:18-cv-00020, Plaintiff's claims were dismissed because Plaintiff did not plead adequate facts despite being given multiple opportunities to do so.

In any event, although Plaintiff takes issue with the Magistrate Judge's characterization of his claims, he has not identified any nonfrivolous underlying claim that he was prevented from pursuing because of inadequate legal material. Instead, as noted by the Magistrate Judge, Plaintiff complains about the outcome of cases he was able to pursue. He only speculates that things might have gone differently had he had unfettered access to legal resources. But as pointed out by the Magistrate Judge, the dismissal of his federal civil actions was based on the nature of his underlying claims, not on any limitations on his

7

access to legal supplies and materials. Plaintiff has failed to show any actual injury with respect to the dismissal of his federal civil cases. Thus, his objections are overruled and the Court accepts the Magistrate Judge's recommendation that the claims be dismissed.

### B.     Excessive Use of Force (Count III)

Plaintiff alleges that on January 26, 2018, he was injured in a use-of-force incident. Specifically, he asserts that Defendant Diaz ordered the confiscation of his property during a confrontation between officers and Plaintiff in his one-man cell. (Dkt. No. 8 at 11–12.) He contends that Defendant Diaz's order directing the confiscation of his property was unlawful.[1] So he reasons that he had a right to resist the allegedly unlawful order, and he admits that he did resist it. (*See id.* at 5, 8; Dkt. No. 25 at 42; Dkt. No. 18 at 11–12.)

According to Plaintiff, "[a]fter the officers took [his] property," he "went into the corner of the room and sat down in order to get out of their way." (Dkt. No. 18 at 10.) He asserts that "all the officers had to do was take his property and leave," that he had already stopped resisting, and that he no longer posed a security threat because he was already in segregation. (Dkt. No. 25 at 41.) He states that Deputy Martinez and Deputy Duran pressed down on him while he was sitting on the ground, compressing his body into an abnormal position. (Dkt. No. 18 at 10; Dkt. No. 8 at 5.) He alleges that after the use of force, he suffered internal bleeding or a tear in his bladder, he urinated blood, and was taken to the hospital. (Dkt. No. 18 at 13.)

---

[1] According to Plaintiff, Defendant Diaz ordered the confiscation of his property to punish him for kicking the door of his cell in "moral outrage for being placed in solitary confinement." (Dkt. No. 8 at 5.) He denies that the property was taken because he lunged at an officer or because he used his meal tray as a weapon during the verbal altercation with the officers. (Dkt. No. 18 at 11.)

He claims that officers used force against him to punish him, even though he was no longer a threat and had quit resisting. (*Id.*; Dkt. No. 18 at 10.) But the authenticated video of the incident tells a different story. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining that the court does not have to accept the plaintiff's version of events if it is "blatantly contradicted" by video evidence). Plaintiff admits that jail officials came to his cell on January 26, 2018 because he was "kicking the door in his moral outrage" after having been placed in solitary confinement for causing a disturbance elsewhere in the jail. The video does not show Plaintiff kicking the door, but as noted by the Magistrate Judge, it does show Plaintiff wetting toilet paper and making several attempts to apply it to the camera, obscuring the view into his cell. Moreover, when jail officials responded, he darted across his cell to grab his empty meal tray from his property box, holding it between himself and the officers and taking a threatening stance. He remained visibly agitated as he engaged in intense conversation with the responding officers. After he relinquished his meal tray, officers turned to leave, but Plaintiff furrowed his brow, took a few big steps towards them, and jerked his head in their direction, appearing to shout something. They promptly returned to the cell.

The video of the incident shows that when an officer moves to take Plaintiff's property box, Plaintiff quickly counters that movement, grabbing his box and putting his weight on top of it. Four officers struggle to pry the box from his hands, and he resists with enough force that one officer is knocked down in the process. A fifth officer is able to remove the box from Plaintiff's grip when Plaintiff's legs are lifted out from under him, and he is placed on the floor. Plaintiff scrambles to a seated position as officers try to restrain him. When Deputy Martinez pulls out his handcuffs, Plaintiff tucks his arms under his

chest, twisting his body away to prevent the officers from accessing his wrists and refusing to allow himself to be restrained. Plaintiff evades the officers' attempts to secure his arms for a few minutes, scooting himself toward the back corner of his cell as the officers try to wrestle his arms free. Plaintiff struggles against Deputy Martinez and Jailer Knox until they are finally able to cuff him, after moving him back to the center of the cell and placing him flat on his stomach. As soon as Plaintiff is restrained, the officers stop using force.

As noted by the Magistrate Judge, the authenticated video evidence clearly refutes Plaintiff's contention that he stopped resisting, moved out of the way, and allowed the officers to take his property. The Court must not, and will not, credit Plaintiff's version of events, reiterated in his objections, over the blatantly contradicting video evidence.

### i. Defendant Deputy Jonathan Martinez

Still, the Magistrate Judge recommended that the Court require an answer or other responsive pleading from Deputy Martinez on Plaintiff's excessive-use-of-force claim. Because of Plaintiff's status as a pretrial detainee, the Magistrate Judge noted that to state a claim for excessive use of force, Plaintiff must show "only that the force purposefully and knowingly used against him was objectively unreasonable." (Dkt. No. 22 at 14, citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). The Magistrate Judge analyzed his allegations using the factors enumerated by the Supreme Court in *Kingsley*, 576 U.S. at 396–97. (Dkt. No. 22 at 14, 18–21.)

First, the Magistrate Judge found—based on Plaintiff's pleadings, the authenticated records, and the video of the incident—that some amount of force was necessary and objectively reasonable in response to Plaintiff's refusal to comply with orders and resistance. (Dkt. No. 22 at 18.) Plaintiff objects to this initial finding, insisting that because he was a

10

pretrial detainee, rather than a convicted prisoner, he had a right to refuse the officers' orders. He argues that the order to confiscate his property was unlawful, so he did not have to obey it. Thus, he concludes that because his resistance was justified, any force used to counter it was objectively unreasonable. He acknowledges the breadth of caselaw relied on by the Magistrate Judge to reach the opposite conclusion, establishing that disobeying correctional officers' orders—even those that the inmate believes improper—poses a threat to the order and security of the institution. (Dkt. No. 22 at 18.) He argues, however, that these cases should not apply to him because they involved refusals by convicted inmates, rather than pretrial detainees.

But the Supreme Court has explained that "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order." *Bell v. Wolfish*, 441 U.S. 520, 547 n.28 (1979). Additionally, the Court explained that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546. Here, Plaintiff admits that he caused a disturbance to bring the officers to his cell. He acknowledges that he resisted the officers' attempt to confiscate his property because he believed that it was unlawful. His claim that he stopped resisting and moved out of the way to allow the officers to carry out their task is flatly contradicted by the video. The Magistrate Judge correctly concluded that Plaintiff's actions posed a threat to institutional security and that some force was objectively reasonable to restore order and maintain institutional security. Plaintiff's objection to this point is overruled.

11

Turning to the *Kingsley* factors, the Magistrate Judge found that the first, fifth, and sixth factors—the relationship between the need for the use of force and the amount of force used, the threat reasonably perceived by the officer, and Plaintiff's active resistance—weighed in favor of Defendant Martinez. But the second, third, and fourth factors—the extent of Plaintiff's alleged injury, any effort made by the officer to temper the use of force, and the severity of the security problem at issue—weighed in favor of Plaintiff. Ultimately, the Magistrate Judge determined that because of the extent of Plaintiff's alleged injury, and the Court's inability to determine any effort made to temper the severity of the force used, the Court should require an answer from Deputy Martinez on this claim. The Court accepts the findings, conclusions, and recommendation of the Magistrate Judge and will direct service on Deputy Martinez by separate order.

### ii.    Defendant Deputy Denise Duran, Jailer Logan Knox, and Plaintiff's Request to Amend

Next, the Magistrate Judge found that the authenticated records and video evidence shows that Deputy Duran was not involved in the use of force, but instead a different official, Jailer Logan Knox, assisted in restraining Plaintiff. So, the Magistrate Judge recommends that Plaintiff's excessive-use-of-force claim against Deputy Duran be dismissed. Plaintiff does not object to this recommendation, but he asks for leave to amend his complaint to plead this claim against Jailer Knox instead. The Court finds that Plaintiff's request should be granted.

Given the procedural posture of this case, Plaintiff may only amend his pleading if the Court grants him leave to do so. *See* Fed. R. Civ. P. 15(a). Rule 15(a)(2) requires a trial court to "freely give leave when justice so requires." Plaintiff is not automatically entitled to

amend his complaint, however, and decisions concerning motions to amend are left to the sound discretion of the Court. *See Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998). Additionally, Rule 15(c) allows an amendment to relate back to the date of the original complaint "if the change is the result of an error, such as misnomer or misidentification." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998).

Here, Plaintiff mistakenly named the wrong defendant, and he promptly sought to amend his complaint to name the relevant official after discovering his error. Moreover, the Court finds that permitting the change now will not prejudice the defendants because the Court has not yet ordered service of Plaintiff's claims. Thus, the Court will permit Plaintiff to amend his pleading to name Jailer Logan Knox as a defendant for purposes of his claim. And the Court will follow the recommendation of the Magistrate Judge and dismiss the excessive-use-of-force claim against Deputy Denise Duran.

Finally, because Plaintiff's factual allegations against Jailer Knox are virtually identical to his allegations against Deputy Martinez, the Court will likewise require an answer from Jailer Knox.

### iii.    Defendant Misty Diaz

The Magistrate Judge determined that Plaintiff failed to state a claim against Defendant Jail Administrator Misty Diaz because he did not allege that she was personally involved in the force, only that she ordered the confiscation of his property. Indeed, Plaintiff focuses much of his complaint against Diaz on the confiscation of his property and the importance of his property rights under various theories. In his responses to the Magistrate Judge's questionnaire, Plaintiff does not mention that Diaz was involved at all in the use of force, nor does he say she was responsible for his physical injuries. Instead, he

13

explains that she violated his property rights and caused him emotional distress. (Dkt. No. 18 at 7–8.)

Plaintiff objects to the Magistrate Judge's recommendation and points to a single sentence in the fact section of his amended complaint—separate from where he lists his claims against each defendant—where he alleges that Diaz ordered "not only the property confiscation but objectively unreasonable force against the plaintiff." He now argues that she was personally involved because she ordered the use of force. *See Turner v. Lt. Driver*, 848 F.3d 678, 696 (5th Cir. 2017) (explaining that "[p]ersonal involvement of supervising personnel generally includes giving a command, signal, or any other form of direction to the officers that prompt[s]" the constitutional violation).

Under Section 1983, supervisors are not liable for the actions of their subordinates on any theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). It is not enough that a supervisor is present when a constitutional violation occurs, rather, a plaintiff must show that the supervisor was personally involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425–26 (5th Cir. 2006). However, "[a] superior officer issuing a direct order to a subordinate to use excessive force demonstrates both the necessary action and causality for a superior-liability claim." *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018).

As noted by the Magistrate Judge, the video does not have sound, so it cannot refute Plaintiff's contention that Diaz ordered "objectively unreasonable force." (Dkt. No. 8 at 5.) The Court understands the Magistrate Judge's recommendation in light of Plaintiff's misplaced emphasis on his perceived violation of his property rights. But based on

14

Plaintiff's allegation that Diaz also ordered unreasonable force—albeit not clearly pled—
and the requirement to construe pro se allegations liberally, Plaintiff's objection is sustained.
The Court finds that Defendant Diaz should be required to answer or otherwise respond to
Plaintiff's excessive-use-of-force claim.

### C.    Fourth Amendment Property Claim (Count IV)

The Magistrate Judge recommended that the Court dismiss Plaintiff's claim that
Defendants Diaz, Martinez, and Does illegally confiscated items from his cell, including
legal papers.  The Magistrate Judge based this recommendation on well-settled law that "the
Fourth Amendment proscription against unreasonable searches does not apply within the
confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).  Plaintiff objects,
arguing that the Supreme Court's holding in *Hudson* should only be applied to convicted
inmates and not pretrial detainees.  (Dkt. No. 25 at 36.)  He also attempts to explain that he
does not rely on his privacy rights, but rather his right "to be secure in his papers and
effects" under the Fourth Amendment.  (*Id.* at 37.)

As discussed more thoroughly below, the Supreme Court carefully examined pretrial
detainees' rights in *Bell v. Wolfish*, 441 U.S. 520 (1979).  But notably, the Court "refused to
hold that a pretrial detainee has a privacy interest in his person that is protected by the
Fourth Amendment." *Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir. 1993) (citing *Bell*,
441 U.S. 520).  Considering *Bell* and *Hudson* together, the Eleventh Circuit found it safe to
assume "that a pretrial detainee ha[s] a diminished expectation of privacy" and upheld the
confiscation of personal items that were seized after a detainee was found to have violated
institutional rules. *United States v. Vernon*, 262 F. App'x 157, 158 n.3 (11th Cir. 2008).  And
as noted by the Magistrate Judge, district courts have necessarily concluded "that both pre-

15

trial detainees and convicted prisoners lose their Fourth Amendment rights when the cell door clangs behind them." *Gill v. Neaves*, No. SA-82-CA-582, 1986 WL 15688, at *4 (W.D. Tex. Aug. 5, 1986).

Courts have widely recognized the need for correctional officers to devise reasonable policies to maintain security, to preserve internal order and discipline, and to detect and deter possible contraband in their facilities. *See, e.g., Florence v. Bd. Of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318, 328 (2012). Thus, the Supreme Court has repeatedly emphasized the necessity of deferring to jail officials who implement "policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Block v. Rutherford*, 468 U.S. 576, 585 (1984) (quoting *Bell*, 441 U.S. at 547).

Here, Plaintiff has not shown that the seizure of his personal property by jail officials—during a disturbance he created—violated his rights under the Fourth Amendment. And Plaintiff acknowledges that the items were returned to him after three days.[2] (Dkt. No. 18 at 13–14.) But even if Plaintiff had a constitutionally protected interest in his property, "[t]he deprivation of a constitutionally protected property interest caused by a state actor's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim unless the state fails to provide an adequate post-deprivation remedy." *Marshall v. Menchaca*, 813 F. App'x 960, 961 (5th Cir. 2020). "It is further established that neither negligent nor intentional deprivations of property by state officials rise to the level of due process violations if state law provides adequate post-deprivation

---

[2] He originally claimed that some of his items were damaged or destroyed, but in his response to the Magistrate Judge's Questionnaire, he withdrew this claim because the damage was not intentional or malicious. (*See* Dkt. No. 18 at 15.)

16

remedies. *Kupstis v. Davis*, No. 1:10-CV-0157-BI, 2010 WL 7093539, at *3 (N.D. Tex. Dec. 28, 2010), *adopted,* No. 1:10-CV-157-C ECF, 2011 WL 3157165 (N.D. Tex. July 26, 2011); *Murphy v. Collins,* 26 F.3d 541, 543–44(5th Cir. 1994). "The Texas post-deprivation remedies—which include an action for the tort of conversion or an administrative remedy for lost or damaged property—are adequate." *Marshall,* 813 F. App'x at 961; *see also Murphy*, 26 F.3d at 543-44.

Plaintiff's objections to the Magistrate Judge's findings, conclusions, and recommendation on this claim are overruled. The Court accepts the Magistrate Judge's conclusion that Plaintiff has failed to state a cognizable claim against the Defendants for confiscating his personal property. Thus, the Court will follow the Magistrate Judge's recommendation and dismiss this claim with prejudice.

### D.     Due Process Claims—Punitive Conditions of Confinement (Count V)

Plaintiff complains that Jail Administrator Misty Diaz and Sheriff Gary Maddox subjected him to punitive conditions for three days following the January 26, 2018 disturbance and use-of-force incident in violation of his due process rights. Specifically, he alleges that without notice or other process, Defendants placed him in a holding cell, fed him only food loafs, and denied him (1) toothbrush and toothpaste, (2) stationary, (3) mattress, (4) recreation time, (5) telephone, and (6) access to his legal work.

#### i.      Procedural Due Process

The Magistrate Judge considered Plaintiff's allegations in light of both his procedural due process rights and his substantive due process rights. First, he concluded that Plaintiff's factual allegations were sufficient to state a claim for denial of his procedural due process rights and that the Court should require Defendants Diaz and Maddox to respond to this

17

claim. *See Ford v. Bender*, 768 F.3d 15, 24, 27 (1st Cir. 2014) (noting that "[e]ven when prison officials permissibly may punish a pretrial detainee for discrete violations of facility rules, they must provide him with adequate process," and that the "merits of the deprivation itself are immaterial to the procedural due process analysis"). Plaintiff did not object to this portion of the Magistrate Judge's report. Finding no clear error, the Court accepts the Magistrate Judge's recommendation and will direct service on Defendants Diaz and Maddox by separate order.

### ii.  Substantive Due Process

Then, the Magistrate Judge concluded that Plaintiff failed to state a viable claim for a violation of his substantive due process rights and recommended that this portion of the claim be dismissed. The Magistrate Judge found that Plaintiff complained of only de minimis restrictions over a relatively short period of time. Thus, the Magistrate Judge concluded that his allegations did not give rise to a constitutional claim for violation of his substantive rights.

Plaintiff objects to the dismissal of his substantive due process rights. He argues that the cumulative effect of the restrictions, including his mental and emotional suffering, are more than de minimis. (Dkt. No. 25 at 16–19.) Plaintiff acknowledges the similarity between the conditions he complains of and those found to be de minimis by the Fifth Circuit in *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (finding that pretrial detainee's allegations that he was denied visitation, telephone access, recreation, mail, legal materials, sheets, and showers for three days failed to give rise to a constitutional claim). But he asserts that the totality of his conditions and the resulting emotional and psychological harm should be considered more than de minimis. (*Id.*)

18

He also asserts that even if the deprivation was de minimis, the Court may not dismiss his claim because "a violation of constitutional rights is never de minimis." (*Id.* at 20.) Additionally, he claims that he had a state-created liberty interest in his right to normal meal service, hygiene items, recreation, and bedding and the denial of these privileges violated the jail standards set out in the Texas Administrative Code. (*Id.* at 19–20.)

"Pretrial detainees, unlike convicts, have a liberty interest in avoiding punishment—an interest that derives from the Constitution itself." *Surprenant v. Rivas*, 424 F.3d 5, 17 (1st Cir. 2005). But not every restriction imposed during detention "amounts to punishment in the constitutional sense." *Bell*, 441 U.S. at 537. "[T]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Hamilton*, 74 F.3d at 106 (citing *Bell*, 441 U.S. at 539 n.21). Additionally, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540.

Plaintiff disagrees with the Magistrate Judge's finding that the restrictions and conditions he faced in the holding cell for three days after the January 26 incident amounted to no more than de minimis impositions. But he has not shown that his case is materially distinguishable from those relied on by the Magistrate Judge—he complains of relatively minor discomforts imposed over a three-day period. Plaintiff has not shown that the restrictions amounted to punishment in the constitutional sense. For these reasons and those given by the Magistrate Judge, the substantive due process portion of Plaintiff's claim in Count V is dismissed. Plaintiff's objections are overruled.

19

### E.    Due Process – Inmate Disciplinary Proceedings (Claims VI and VII)

Plaintiff alleges that after the January 26 incident, he was charged with a disciplinary infraction for telling a female officer that she "look[ed] sexy using force." He was originally charged with sexual solicitation in violation of the jail rules. He does not dispute that he received notice of the charge and a hearing, nor does he deny that he committed the infraction. Nevertheless, he contends that he is not culpable because of his mental illness. He complains, then, that he was punished for violating the facility rules, resulting in administrative segregation and a loss of 30 days of recreation, television, commissary, and telephone privileges. Then, after Plaintiff appealed the disciplinary conviction, Plaintiff alleges that Defendants improperly changed the charge from sexual solicitation to disrespect of staff. His punishment did not change.

The Magistrate Judge concluded that Plaintiff failed to state a claim for alleged due process violations. Plaintiff objects, insisting that he cannot be held accountable because he has a mental illness diagnosed by the State. In other words, because the State has adjudicated him as a sexually violent predator necessitating civil commitment, he "cannot be held morally to blame for his acts of sexual violence." (Dkt. No. 25 at 21.) Plaintiff argues then, that he should not be subject to discipline for violating facility rules because he "lacks free will to control his sexual impulses." (*Id.*)

He also alleges that jail officials altered the charge to weaken his chances of succeeding in a civil-rights suit. (*See* Dkt. No. 18 at 30 ("It is a fact that they punished me for a mental disease the state says is beyond my control. To change the name is to cover the act up with a gloss to make it look to be something different . . . . It is circumspect and a fact question for the jury to decide that the changing from sexual solicitation to disrespect of

20

staff was due to my threaten litigation to which I clearly indicated I would follow through with [all sic].")) Then, he complains that Defendants violated jail policy and the Texas Administrative Code by not renewing his opportunity to plead guilty to the altered charge for a lesser punishment.

The Magistrate Judge also found—and Plaintiff does not dispute—that the altered charge was based on the same conduct and subject to the same defense. And he admits to the underlying conduct. (*See* Dkt. No. 18 at 28 ("I was very sorry for the words I spoke but I could not help myself . . . . I could not control my actions [and] the act . . . is a bi-product of my mental defect.")) And he acknowledges that the new charge did not affect his punishment. (*Id.* at 30.) Thus, the Magistrate concluded that Plaintiff received adequate process and that he was not prejudiced by any change to the disciplinary charge.

"[A] pretrial detainee may not be subjected to any form of punishment *for the crime for which he is charged*," but they are not immune from prison-disciplinary actions. *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999) (emphasis added); *see also Frank v. Larpenter*, 234 F.3d 706, 2000 WL 1598076 (5th Cir. 2000) (table). For example, "a pretrial detainee may be disciplined for a specific institutional infraction committed during the period of his detention," as long as the discipline imposed is "roughly proportionate to the gravity of the infraction." *Surprenant v. Rivas*, 424 F.3d 5, 13 (1st Cir. 2005). In these institutional disciplinary proceedings, pretrial detainees are entitled to the same due process protections that convicted prisoners receive. *See Larpenter*, 2000 WL 1598076, at *2.

Here, after receiving notice and a hearing, Plaintiff was permissibly disciplined for violating the facility's rules. Jail officials have a legitimate penological interest in maintaining institutional security, maintaining order, and protecting both officers and

21

inmates. Plaintiff's argument—essentially that he should be permitted to harass or otherwise act out without repercussion because of his status as a civilly committed sexually violent predator—is unavailing. Additionally, although Plaintiff insists that Defendants' alleged violations of jail policy and state regulations should be cognizable under Section 1983 and afforded the same enforcement as constitutional guarantees, he is mistaken. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

As discussed by the Magistrate Judge, Plaintiff received all of the process that was constitutionally required, and his punishment was proportionate to the gravity of the infraction. He has thus failed to state a claim for violation of his due process rights with respect to his disciplinary charge or punishment. The Court will adopt the recommendation of the Magistrate Judge on these claims. Thus, Plaintiff's due process claims stemming from his disciplinary charge and punishment (Counts VI and VII) are dismissed.

### F.    Denial of Telephone Privileges and Right to Make Bail (Count VIII)

As mentioned above, Plaintiff lost certain privileges—including telephone privileges—for 30 days as discipline for violating the facility rules. He complains that on five separate days during that 30-day restriction, he was prevented from using the telephone to call his mother and request that she bond him out. He asserts that his mother would have posted his bond if he could have called her during this period. He admits that had he bonded out, he would have returned to the custody of the Texas Civil Commitment Center, but he asserts that he wanted to go back so that he could access the law library.

The Magistrate Judge found, and Plaintiff concedes, that he was permitted to use the phone before and after his 30-day disciplinary restriction. Plaintiff also admits that he retained mail privileges even while in disciplinary segregation. He claims, in conclusory

22

fashion, that writing a letter to his mother during this time would not have been effective to communicate his desire to make bond. (Dkt. No. 25 at 29.) As noted by the Magistrate Judge and discussed above, jail officials temporarily restricted Plaintiff's telephone privileges—after conducting a hearing—as discipline for his misconduct while in detention. (Dkt. No. 22 at 30.) In other words, the restriction was not arbitrary or purposeless, but rather served a legitimate interest in enforcing facility rules, maintaining order, and preserving institutional security. And the Court has already found that the disciplinary sanction was in proportion to the gravity of Plaintiff's disciplinary offense.

Plaintiff appears to argue that he should have been permitted to opt out of disciplinary segregation by bonding out and returning to the confinement in the civil commitment center. (Dkt. No. 25 at 29.) But Plaintiff only argues that Defendants are responsible for denying him access to the telephone during his temporary telephone restriction. He does not attribute any other act or omission with impeding his ability to make bond. And he does not complain that officials carried out his disciplinary sanction improperly, that it was any longer than the 30 days originally prescribed, or that he lost any additional privileges. In other words, he complains that jail officials carried out his disciplinary restriction exactly as they were supposed to—in keeping with the notice he received.

Moreover, the fact that Plaintiff preferred to communicate with his mother over the phone instead of in writing does not alter the Court's analysis. He argues that "prolonging the right to bail by seeking it via the mail system" is unreasonable. Plaintiff complains that he asked to use the phone on five separate occasions between January 27, 2018 and February 10, 2018. He has not shown that it would have been ineffective or unreasonable to

23

send a letter during this same two-week timeframe or that he was prevented from doing so. He does not allege that anyone attempted to bond him out, but the jail refused to release him. Additionally, the Court notes that Plaintiff has not shown that he attempted to bond out before or after serving his 30-day disciplinary sanction.

In sum, Plaintiff does not actually allege that jail officials deprived him of the right to bail. He instead complains that jail officials enforced his disciplinary restriction exactly as they notified him that they would after holding a hearing. His complaint—that the reasonable consequences for his misbehavior during detention were inconvenient or uncomfortable—does not state a claim for relief under Section 1983. Thus, Plaintiff's objections are overruled. The Court adopts the Magistrate Judge's findings, conclusions, and recommendation on this claim. Plaintiff's claim for denial of the opportunity to use the telephone to make bail is dismissed.

## G.     Price-Gouging for Telephone and Commissary Items (Counts IX and X)

The Magistrate Judge found that Plaintiff failed to state a viable constitutional claim against Defendants for charging what he believes to be exorbitant prices for telephone use and commissary items. Plaintiff admitted that he was able to place around 75 phone calls during this time, despite the allegedly high rates. He complains that he was unable to purchase some of the items he wanted from the commissary, including snacks, thermals, stamps, and games.

Plaintiff objects to the Magistrate Judge's recommendation that these claims be dismissed, arguing that the high prices are punitive in nature and had a chilling effect on his ability "to communicate in his chosen manner with his family." (Dkt. No. 25 at 44–45.)

24

As thoroughly discussed by the Magistrate Judge (Dkt. No. 22 at 32–34), claims that detention centers overcharge for phone calls and commissary items "have been uniformly rejected by the courts." *Pruett v. Burnett*, No. 6:10-CV-00084, 2010 WL 1959996, at *1 (E.D. Tex. Apr. 5, 2010); *see also Recio v. Commissary Clerk Garcia*, No. 2:15-CV-00279, 2015 WL 9308273, at *2 (N.D. Tex. Dec. 21, 2015) (collecting cases). Simply put, "complaints that essentially allege that prison officials have interfered with a detainee's desire to live more comfortably—including challenges to restrictions on telephone usage and the high prices for telephone calls and commissary items—do not allege a constitutional violation and are properly dismissed as frivolous." *McGarrah v. Williams*, No. 3:14-CV-1119-M-BN, 2014 WL 4696015, at *2 (N.D. Tex. Sept. 18, 2014).

Plaintiff's objections—essentially insisting that any inconvenience imposed in a pretrial detention setting should be presumed punitive—are overruled. He relies on the Supreme Court's admonition in *Bell v. Wolfish* to reach this conclusion, but he discounts the portions of that opinion with which he disagrees. *See, e.g., Bell*, 441 U.S. at 537 (explaining that "loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'") Plaintiff has made it clear that he disagrees with the Magistrate Judge's reading of *Bell*, as well as that of every other court to reject similar claims. But he has not shown that his circumstances merit a different result. Plaintiff's allegations that jail officials overcharged him for telephone use and commissary items lack an arguable basis in law. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Thus, the Court follows the recommendation

of the Magistrate Judge and dismisses these claims (Counts IX and X). Plaintiff's objections are overruled.

## H.    Denial of Books (Count XII)

Plaintiff asserts a policy claim against Lamb County—and alleged policy-makers Sheriff Maddox, Jail Administrator Diaz, and Chief Deputy Craig Thompson—for denying him the right to purchase books from outside vendors. First, in his amended complaint, he contends that he requested to purchase "a dictionary to help facilitate his defense" and "to protect his legal interest." (Dkt. No. 8 at 9–10, 21.) Then, in his responses to the Magistrate Judge's questionnaire, he adds that "the dictionary was needed so [he] could express [him]self more fully in [his] endeavors at the law and writing generally." (Dkt. No. 18 at 34.)

He also claims he "requested several books other than just a dictionary" that he wanted to read in order "to escape the dungeon they placed me in." (*Id.*) He contends that after he "read all the books of value in the library," he had "no way to free [his] mind from the depressing environment." (*Id.*) He claims that he requested to purchase books to finish a series that were missing from the library "to finish the tale" and "allow [his] mind to wonder in the freedom of [his] imagination." (*Id.*)

The Magistrate Judge understandably construed Plaintiff's claim about the dictionary to allege a denial of access to courts. (Dkt. No. 22 at 35.) Plaintiff's fact allegations seem to focus on his hope that a dictionary might make his legal work more efficient or successful. (*See* Dkt. No. 18 at 34 ("When I wrote motions I had to search unendingly to find a word or a like word that was spelled in my paper work. So that limited my ability to function in the way I intended to convey my expression and ideas in the

26

law.")) But because Plaintiff alleged no facts to show that the lack of a dictionary prejudiced his position as a litigant, the Magistrate Judge recommended that this claim be dismissed. *See Lewis*, 518 U.S. at 356.

However, Plaintiff objects to the Magistrate Judge's interpretation of his claim. (Dkt. No. 25 at 39.) He clarifies that he never intended to allege a denial of access to courts. (*Id.* ("If I could have made an access to the court claim I would have . . . The denial of the dictionary does not deny me access to the court. In no way did it prevent me from filing a non-frivolous legal claim.")) The Court accepts Plaintiff's clarification. Thus, the Court finds that Plaintiff did not state a claim for denial of access to courts on these facts.

Instead, Plaintiff contends that the denial of books—including both the dictionary and the novels he requested—"is more about [his] ability to express [him]self." (Dkt. No. 25 at 39.) He asserts that the denial "stunt[ed his] ideas and expression." (*Id.*) The Magistrate Judge found that Plaintiff had not pleaded enough facts to establish a violation of his First Amendment rights and recommended that the claim be dismissed. (Dkt. No. 22 at 36.) Specifically, the Magistrate Judge found that Plaintiff did not allege that he was denied all books, only the dictionary and certain works he requested to complete a series he began reading in the jail library. (*Id.*)

Plaintiff objected to the Magistrate Judge's recommendation. He contends that the screening process did not help him develop the factual basis of his claim. (Dkt. No. 25 at 41 ("Therefore the questionnaire was not specific enough with the question.")) But in light of the Magistrate Judge's findings, he now alleges new facts to cure the deficiency in his pleading. Specifically, he now asserts that the jail policy restricted his ability to order any books—not just select novels. (Dkt. No. 25 at 39.) He claims that he was denied all book

27

requests and that "Diaz and Thompson told [him] no on the books [he] asked for not because of content or anything else but because the Jail according to them does not allow books." (Dkt. No. 25 at 157.)

In light of Plaintiff's new factual allegations, the Court finds that he has now pleaded enough facts to require an answer or other responsive pleading from Defendants on this claim. *See Kleindienst v. Mandel*, 408 U.S. 753, 762–63 (1972) (explaining that "[i]t is now well established that the Constitution protects the right to receive information and ideas"); *Mann v. Smith*, 796 F.2d 79, 82 (5th Cir. 1986) (finding that a county jail's policy "ban[ning] newspapers and magazines must be struck down under the first amendment if it represents an 'exaggerated response' by jail officials to [a] legitimate need").

Thus, because Plaintiff pleaded new facts to cure the deficiency described by the Magistrate Judge, the Court will decline the Magistrate Judge's recommendation to dismiss and instead direct service on Defendants Lamb County, Misty Diaz, Gary Maddox, and Craig Thompson to answer or otherwise respond.

## I. Policy Claim and Privileges and Immunities (Count XII)

In his final claim, Plaintiff alleges that Defendants, by policy, practice, or custom, deprived him of the "privileges of citizenship absent a conviction under the law." (Dkt. No. 8 at 21.) Specifically, he asserts that the inmate-disciplinary charges and the resulting punishment denied him "privileges in the pursuit of happiness by restricting the ability to acquire property, . . . denial of liberty by segregation; loss of phone, loss of first amendment rights by loss of access to information by the television and loss of the right to acquire property." (*Id.* at 22–23.) He focuses this claim on the Defendants' enforcement of the facility rules and the disciplinary sanctions he received for breaking those rules.

28

Because this claim is based on the same set of facts as Plaintiff's Counts VI and VII, the Magistrate Judge addressed it together with those claims. (Dkt. No. 22 at 27 n.20.) And because the Magistrate Judge found no underlying due process violation in relation to Plaintiff's disciplinary charges and punishment, the Magistrate Judge concluded that Plaintiff had not stated a viable policy claim. (*Id.*); *see also Hicks-Fields v. Harris Cty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (explaining that there cannot be municipal liability without an underlying constitutional violation.)

Plaintiff objects, arguing that the Magistrate Judge failed to consider his claim under the Privileges and Immunities Clause as he intended it. But "the Privileges and Immunities Clause is inapt because it 'prevents a state from discriminating against citizens of another state in favor of its own citizens.'" *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 320 (5th Cir. 2021) (quoting *White v. Thomas*, 660 F.2d 680, 685 (5th Cir. 1981)). Here, Plaintiff complains that his liberty was restricted incident to his pretrial detention and disciplinary infraction—not that he was treated differently than a citizen of another state.

On these facts, Plaintiff has failed to state a viable claim under either theory, and his objection is overruled. Count XII is dismissed.

## 4.  Plaintiff's Motions to Amend (Dkt. No. 25) and to Supplement (Dkt. No. 29)

### A.  Requests to Amend

At the end of his objections, Plaintiff seeks leave to amend his complaint. He makes a few specific requests, then generally requests leave to "better state the facts" with respect to any claim the Court dismisses. (Dkt. No. 25 at 53.) The Court has already addressed most of Plaintiff's specific requests above—namely, allowing Plaintiff to name Logan Knox in his excessive-use-of-force claim and allowing him to clarify the denial-of-books policy

29

claim. (*See* Sections 3.B.ii and 3.H.) Additionally, he seeks leave to amend to "make the 15 U.S.C. 15 anti-trust claims" with respect to commissary and telephone prices. (Dkt. No. 25 at 53.)

Given the procedural posture of this case, Plaintiff may only amend or supplement his pleading if the Court grants him leave to do so. *See* Fed. R. Civ. P. 15(a). Rule 15(a)(2) requires a trial court to "freely give leave when justice so requires." Plaintiff is not automatically entitled to amend his complaint, however, and decisions concerning motions to amend are left to the sound discretion of the Court. *See Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998). To aid the exercise of that discretion, Courts in the Fifth Circuit consider five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

Here, Plaintiff has had at least three chances to hone his factual allegations. He filed his amended complaint (Dkt. No. 8), responses to the Magistrate Judge's questionnaire (Dkt. No. 18), and detailed objections to the Magistrate Judge's findings, conclusions, and recommendations. He now asserts, in conclusory fashion, that if he is given a fourth chance, he could "better state the facts" to cure any remaining deficiencies. The Court finds that Plaintiff has been given ample opportunity to plead his best case. Permitting further amendment now would unnecessarily delay the case. Plaintiff has not shown why he has not pleaded "better facts" before now, after repeated opportunities to do so. Plaintiff's general requests are denied.

Additionally, Plaintiff's request to add antitrust claims must be denied as futile

because he has not alleged an antitrust injury. *See Atl. Richfield Co. v. USA Petroleum, Co.,* 495

U.S. 328, 344 (1990); 15 U.S.C. § 15(a).  Except as noted in previous sections of this order,

Plaintiff's requests to amend are denied.

**B.      Request to Supplement**

As discussed above, Plaintiff's complaint centers around his pretrial detention in the

Lamb County Jail in the first half of 2018.  He was no longer detained in the Lamb County

Jail when he filed this suit.  These claims have undergone significant judicial screening.

Now, Plaintiff seeks to supplement his claims with new factual allegations from a separate

period of pretrial detention, more than two years later.  He names several of the same

officials as defendants for his new claims, but he also identifies several new defendants.

Likewise, a few of the proposed supplemental claims appear similar to Plaintiff's original

claims.  For example, he complains that the Lamb County Jail policy is still preventing him

from ordering books from outside vendors.  (Dkt. No. 29-1 at 2.)  But Plaintiff also seeks to

raise several entirely new claims, such as complaints about his medical treatment and more

recent disciplinary processes.

When a plaintiff seeks to supplement his complaint based on events that happened

"after the date of the pleading to be supplemented," the request is governed by Federal Rule

of Civil Procedure 15(d).  *Haggard v. Bank of Ozarks Inc.,* 668 F.3d 196, 202 (5th Cir. 2012).

But although Rule 15(a) provides that leave to amend should be "freely given," the text

of Rule 15(d) contains no such provision.  *Burns v. Exxon,* 158 F.3d 336, 343 (5th Cir. 1998).

Still, "the discretion exercised in deciding whether to grant leave to amend is similar to that

for leave to file a supplemental pleading." *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983).

The Fifth Circuit has suggested that the same factors that inform motions to amend under Rule 15(a) should also apply to a Rule 15(d) motion. *See Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1194 (5th Cir. 1982) (citation omitted), *vacated on unrelated grounds by* 460 U.S. 1007 (1983). But "[l]eave to supplement should not be granted where a plaintiff attempts to present 'new and different cause[s] of action'" *Garcia v. Hackman*, No. C-10-311, 2011 WL 2457918, at *19 (S.D. Tex. Jun. 16, 2011) (quoting *Griffin v. Cty. Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 226 (1964)).

Plaintiff seeks to present new and different causes of action against different Defendants. For this reason alone, leave to supplement under Rule 15(d) should not be granted. Moreover, Plaintiff's new claims arose out of separate transactions and occurrences, include allegations of different injuries, and involve distinct questions of fact and law. The supplemental allegations are not relevant to his original claims, and Plaintiff could bring a separate lawsuit to pursue the new claims. Thus, the Court exercises its discretion to deny Plaintiff's motion to supplement. (Dkt. No. 29)

## 5.   Conclusion

Except as noted above, Plaintiff's objections are overruled, and the Court accepts and adopts the findings, conclusions, and recommendation of the Magistrate Judge.

As a result, the Court orders:

(1)    Plaintiff's request to amend to add Defendant Logan Knox is granted. The Clerk is directed to add Logan Knox as a defendant on the docket of this case.

32

(2)     The Court will enter a separate order directing service by the United States

Marshal and requiring a response on the following claims:

      (a)     Plaintiff's excessive-use-of-force claim against Defendants Misty Diaz, Jonathan Martinez, and Logan Knox,

      (b)     Plaintiff's procedural due process claim against Defendants Gary Maddox and Misty Diaz for the imposition of allegedly punitive conditions between January 26, 2018 and January 29, 2018, and

      (c)     Plaintiff's policy claim against Defendants Lamb County, Gary Maddox, Misty Diaz, and Craig Thompson for the denial of books from outside vendors.

(3)     Plaintiff's motion to compel service of process is denied as moot.

(4)     All remaining claims and defendants are dismissed with prejudice under

28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

(5)     There is no just reason for delay in entering a final judgment and final

judgment should be entered as to the above-named Defendants and claims pursuant to

Federal Rule of Civil Procedure 54(b).

(6)     All relief not expressly granted is denied and any pending motions are denied.

Judgment shall be entered accordingly.

Dated September 2 4, 2021.

JAMES WESLEY HENDRIX
United States District Judge