UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH,
Institutional ID No. 6516607

Plaintiff,

v.

No. 5:20-CV-00024-H

LAMB COUNTY, et al.,

Defendants.

## OPINION AND ORDER

The remaining claim in this case involves the alleged refusal of Defendants to allow Plaintiff to purchase a dictionary approximately seven years ago. Defendants filed a motion to dismiss Plaintiff's remaining claim for want of prosecution because Plaintiff has failed to comply with the Court's pretrial deadlines and requirements. Dkt. No. 160. The Court set the matter for a show-cause hearing, which was held by telephone on May 12, 2025. *See* Dkt. No. 166. As explained below, and after careful consideration of the record in this case and the parties' arguments, the Court grants Defendants' motion to dismiss. The record demonstrates a clear pattern of intentional delay and contumacious conduct by Plaintiff at all stages of this case. And although dismissal is a severe sanction, the Court finds that no lesser alternative would serve the interests of justice. As a result, the Court vacates the trial setting.

1.  **Background**

Plaintiff is known as an abusive or vexatious litigant at every level of the federal court system as well as in the Texas state courts.[1] He is an experienced and determined litigant who has filed dozens of lawsuits challenging various aspects of his confinement in different institutions. A search of the national database reveals that he has filed over 70 federal civil actions and appeals.

Plaintiff has earned sanctions for vexatious, harassing, or duplicative lawsuits from the state courts, the Fifth Circuit, and the Supreme Court of the United States. Last year, after considering Plaintiff's history of abusive litigation, evidence of bad faith, the burden of Plaintiff's filings on the courts and other parties, and the adequacy of alternative options, the Court declared Plaintiff a vexatious litigant and imposed a monetary sanction of $500. *See* Dkt. No. 128. In the same order, the Court warned Plaintiff that his pro se status does not exempt him from complying with relevant rules of procedural or substantive law. *Id.* The Court admonished Plaintiff that it would strictly enforce all such rules. *Id.*

Plaintiff's sole remaining claim in this civil-rights case stems from the defendants' alleged informal policy prohibiting Lamb County inmates from purchasing books from

---

[1] The Supreme Court of the United States found that Plaintiff "has repeatedly abused th[e] Court's process." *See Welsh v. Lamb Cnty.*, No. 22-10311, 2024 WL 81580, at *2 (5th Cir. Jan. 8, 2024) (citing *Welsh v. Collier*, 143 S. Ct. 1046 (2023)). The Fifth Circuit has noticed Plaintiff's "multitude" of filings and his tendency to name the same defendants and raise parallel issues or similar claims across multiple cases. *Id.* And the Fifth Circuit sanctioned Plaintiff in two separate cases for continuously "fil[ing] frivolous or repetitive pleadings." *See* Dkt. Nos. 122, 124; *Welsh v. Thorne*, No. 23-11109, 2024 WL 1956145, at *2 (5th Cir. May 3, 2024); *Welsh v. McLane*, No. 23-50912, 2024 WL 1008593, at *1 (5th Cir. Mar. 8, 2024). Finally, this Court declared Plaintiff a vexatious litigant. Dkt. No. 128. Additionally, he has been deemed a vexatious litigant by the Texas state-court system and "is prohibited from filing pro se any new litigation in a court of this State without first obtaining permission from the local administrative judge." *In re Welsh*, No. 09-23-00027-CV, 2023 WL 2175768, at *1 (Tex. App. Feb. 23, 2023).

outside venders, which he asserts the defendants used to deny his request to purchase books in the Lamb County Jail about 7 years ago. He filed his original complaint in this case more than five years ago, on January 28, 2020, alleging several unrelated claims against eight defendants. Dkt. No. 1. Plaintiff's frequent, repetitive, and often lengthy filings have delayed this case at every turn. *See* Dkt. No. 101 (Defendants explaining that "Welsh spares no trees when he files pleadings in this Court and on appeal. Many of his filings exceed 100 pages. He is extremely litigious and almost every adverse ruling is appealed, usually after filing a motion for reconsideration.").

After extensive litigation, only Plaintiff's book-policy claim remains. The Court entered a full scheduling order governing the amendment of pleadings, completion of discovery, dispositive motions, and other matters on October 4, 2023. Dkt. No. 104. Plaintiff did not timely comply with the scheduling order's deadlines. First, the scheduling order required all parties to disclose (1) the name and address or employment station of each person likely to have information bearing significantly on any claim or defense, and (2) a summary of the substance of information known by each identified person. Dkt. *Id.* at 5. The disclosures were due on December 15, 2023. *Id.* Defendants timely filed their notice of disclosure. Dkt. No. 106. But Plaintiff never complied with this requirement. Dkt. No. 160 at 10.

The scheduling order also required any amended pleadings to be filed by December 15, 2023. Dkt. No. 104. Plaintiff filed a motion to amend his complaint four days late, Dkt. No. 108, and a motion to supplement more than six months late, Dkt. No. 126. *See* Dkt. No. 128 at 10 (finding that Plaintiff filed the motion to amend "late, without

3

explanation or apology").[2] The Court permitted Plaintiff to partially amend his complaint despite his untimeliness because his late-filed amendment offered important new details and did not necessitate a continuance. Dkt. No. 128. He filed yet another motion to supplement his claims on February 7, 2025—more than a year after the deadline for amended pleadings lapsed. Dkt. No. 142. The Court found that Plaintiff's attempt to add new, entirely unrelated claims stemming from a separate period of confinement six years after the events at issue here was a "transparent attempt to evade the Court's sanction order," and the Court explained that adding claims at this juncture would unnecessarily delay the disposition of this case. Dkt. No. 148. Undeterred, Plaintiff again seeks to supplement his remaining claim now—almost a year and half after the deadline lapsed and only days before trial is scheduled to begin—repeating arguments that the Court has already rejected. Dkt. No. 164; *see also* Dkt. No. 135.

The October 2023 scheduling order also set deadlines for filing and responding to dispositive motions. Defendants timely filed a dispositive motion, Dkt. No. 112, but Plaintiff's response was six days late. Dkt. No. 118. The Court noted that the response was "unapologetically late," but the Court allowed it because Plaintiff offered important new factual allegations that significantly altered the nature of one of Plaintiff's claims.[3] Dkt. No. 128.

On December 9, 2024, the Court scheduled the book-policy claim for a jury trial and set pretrial deadlines and requirements for the parties. Dkt. No. 136. Plaintiff sought a

---

[2] In addition to being late, the amendment repeated frivolous claims that the Court had already dismissed. *See id.*

[3] That claim was dismissed on Defendants' motion for summary judgment in part because of how significantly Plaintiff's story changed in his late-filed response. *See* Dkt. No. 128.

continuance, Dkt. No. 141, but the Court denied the request, Dkt. No. 147.[4] Plaintiff did not timely comply with any of the Court's pretrial requirements or deadlines. The Court ordered Plaintiff to forward his portion of the required pretrial order to defense counsel by April 21, 2025. But he did not participate in preparing the pretrial order in any way. *See* Dkt. No. 150. The Court ordered Plaintiff to file a witness list and an exhibit list no later than April 28, 2025. Dkt. No. 136. Plaintiff never filed a witness list. He filed an exhibit list on May 8, 2025—10 days late. Dkt. No. 163. The Court ordered the parties to confer and file a joint proposed jury charge by May 5, 2025. Defendants timely filed proposed jury instructions, Dkt. No. 156, but Plaintiff did not contribute in any way. The Court also invited the parties to file any necessary motions in limine, proposed voir dire questions, and trial briefs. Defendants timely filed each of these items. Plaintiff filed none.

In short, the record demonstrates that Defendants have spent considerable time, attention, and resources preparing for trial over the last five months. *See* Dkt. Nos. 146, 150, 151, 152, 153, 156, 158, 159. Plaintiff's attention, however, has been elsewhere. *See* Dkt. No. 167. Instead of preparing his portion of the required pretrial order or his lists of witnesses and exhibits, Plaintiff was drafting and filing new complaints in this Court. *See* Nos. 5:25-cv-00078; 5:25-cv-00101. Additionally, between April 7, 2025 and May 2, 2025, Plaintiff filed five motions and two miscellaneous documents in other pending matters in this Court, as well as in the Western and Southern Districts of Texas. *See* Dkt. No. 167. And Plaintiff filed a 96-page appellate brief in the Fifth Circuit ten days before it was due. *Id.*; *Welsh v. Williams*, No. 24-11108. Plaintiff has diligently pursued other claims and

---

[4] Plaintiff later asked the Court to disregard the request for continuance. Dkt. No. 149.

disregarded his remaining claim here. Consequently, Defendants filed a motion to dismiss this case for want of prosecution. Dkt. No. 160.

The Court held a hearing on May 12, 2025, and ordered Plaintiff to show cause why his case should not be dismissed for want of prosecution and why his late-filed, incomplete pretrial materials should not be unfiled. Dkt. Nos. 166, 170.

2. **Legal Standard**

Federal Rule of Civil Procedure 41(b) authorizes the district court to dismiss an action sua sponte for failure to prosecute or to comply with a court order. *Larson v. Scott*, 157 F.3d 1030, 1031 (5th Cir. 1998). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash Railroad*, 370 U.S. 626, 629-30 (1962); *Martinez v. Johnson*, 104 F.3d 769, 772 (5th Cir. 1997).

When the statute of limitations acts to bar future litigation, a dismissal without prejudice operates as a dismissal with prejudice, and the court is required to apply a higher standard of review. *Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 440–41 (5th Cir. 2016); *Gibbs v. Jackson*, No. 22-40731, 2024 WL 446455, at *1 n.1 (5th Cir. Feb. 6, 2024). Dismissal with prejudice "is appropriate when there is a clear record of delay or contumacious conduct by the plaintiff and when lesser sanctions would not serve the best interests of justice." *Nottingham*, 837 F.3d at 440–41 (internal quotation marks omitted) (quoting *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008)). Ordinarily, before dismissing a case with prejudice, courts should consider alternatives like the assessment of fines and costs, attorney disciplinary measures, dismissal without prejudice, or explicit warnings. *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985).

In other words, a dismissal with prejudice is an extreme sanction reserved for the most egregious circumstances. *Id.* at 1519. Normally, a dismissal with prejudice is appropriate when the case involves one or more "aggravating factors," including "(1) delay attributable directly to the plaintiff, rather than his attorney; (2) actual prejudice to the defendant; and (3) delay caused by intentional conduct." *Id.* (citing *Rogers v. Kroger Co.*, 669 F.2d 317 (5th Cir. 1982)).

Despite the severity of dismissal, the Supreme Court has explained that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *see also F.DI.C. v. Conner*, 20 F.3d 1376, 1383 (5th Cir. 1994) ("Courts must be able to invoke punitive instrumentalities to promote the orderly progress of litigated cases.").

3. **Analysis**

Defendants ask the Court to dismiss this case for want of prosecution because Plaintiff has repeatedly failed to comply with the Court's scheduling and pretrial orders. And because Plaintiff would be barred from refiling by operation of the statute of limitations, any dismissal now would be with prejudice.

A. **Plaintiff's arguments**

Plaintiff contends that his untimeliness should be excused because he expected that defense counsel would contact him to seek his input on the required pretrial materials, Dkt. No. 165, and because he did not know for sure when trial was scheduled to commence, Dkt. No. 163. Then, at the hearing, he explained that he did not prepare for trial because he

assumed this case would be reset. Tr. at 15.[5] Finally, he argued that he did not need to comply with the Court's pretrial notice because Defendants could have looked back through his prior filings in this case to glean his position. Tr. at 13–14. These arguments are unpersuasive and not credible.

First, it is Plaintiff's responsibility to prosecute his claims, not Defendants'. Plaintiff contends that his civil confinement prohibits him from calling defense counsel. But he admits that he is able to communicate with defense counsel by mail, and he has successfully done so many times before. He simply chose not to communicate with defense counsel during the pretrial process.

Second, there was nothing ambiguous about the pretrial deadlines in the Court's December 9, 2024 pretrial notice and order. And much of the Court's pretrial notice imposed specific requirements on Plaintiff separate and apart from any required conference with defense counsel. Plaintiff knew about these pretrial requirements and deadlines, and he chose to ignore them. Defendants did not have that luxury—they could not sit back and do nothing. And Plaintiff's statements in the hearing confirm that he expected Defendants to bear most of the burden in preparing for trial.

Additionally, Plaintiff now asserts that the trial in this case conflicted with a trial setting in his pending state-court criminal proceedings. He explained that he did not learn that his criminal trial was reset until May 6, 2025—after all the Court's pretrial deadlines had lapsed. But there are two problems with that argument. Tr. at 15. First, Plaintiff only requested a continuance of this trial based on a state-court civil trial. *See* Dkt. No. 141. And

---

[5] The Court will cite to the transcript of the May 12, 2025 show-cause hearing as "Tr." Followed by the relevant page number.

second, the record belies Plaintiff's timeline. Plaintiff withdrew his request for a continuance on April 22, 2025, asserting that he "no longer has another trial date set therefore he can meet the May 19, 2025 court date." Dkt. No. 149. Even so, Plaintiff continued to sit silent, defaulting on all the Court's pretrial deadlines. Thus, Plaintiff's argument loses credibility and falls well short of showing good cause to excuse the repeated missed deadlines.

Moreover, given the lengthy and overly complicated procedural path of this litigation, the Court finds Plaintiff's argument that defense counsel could have looked at the past filings and intuited his case to be particularly unavailing. Plaintiff contends that, instead of expecting him to comply with the Court's pretrial notice, the defendants should have searched back through years of his filings, sorting out materials related to his various other claims that have been a part of this suit, to discern his potential witnesses and evidence. Plaintiff points to an appendix he filed on October 5, 2022—over two and half years ago—in response to the defendants' first motion for summary judgment. Tr. at 13. He contends that he had "marshaled all of [his] evidence," and "any other filing would have been duplicative." *Id.* So, Plaintiff argues that the did not think it was necessary to file a witness list or exhibit list, despite the Court's instructions, and that "all the defense needed for the pretrial order was contained in [his] affidavit and [his] brief in support." *Id.* But Plaintiff did not attempt to point the defendants to these documents or incorporate them in any response to the Court's pretrial notice. Instead, he did nothing—forcing the defendants and the Court to prepare for trial on nothing more than guesswork. Plaintiff cannot expect Defendants—or the Court—to be clairvoyant.

Plaintiff's complete lack of participation in the pretrial process here was particularly egregious in light of the Court's recent warning that he must adhere to the procedural rules like any other litigant. Dkt. No. 128. And when given the opportunity to show cause at a hearing, he had no explanation whatsoever other than his opinion that the Court's deadlines weren't really important or necessary. In any event, this case demonstrates a clear record of intentional delay and contumacious conduct by Plaintiff that is not limited to the defaulted pretrial deadlines.

**B.    Plaintiff's history of delays and contumacious conduct**

Plaintiff filed this complaint well into the limitation period. And he has delayed the disposition of his claims at every stage of the litigation.

At the outset, Plaintiff complicated this case by pursuing several unrelated claims together. Plaintiff organized his early complaints into 12 counts, including excessive-force, access-to-courts, property-deprivation, and condition-of-confinement claims. He also complained of violations of his procedural and substantive due process rights and his rights under the Privileges and Immunities Clause. And he challenged various aspects of a disciplinary proceeding. These claims arose out of different events and transactions that took place over the course of Plaintiff's 7-month confinement in the Lamb County Jail between November 2017 and June 2018. The varied claims shifted the focus of this litigation again and again.

To make matters worse, Plaintiff has continually modified his claims as the litigation has progressed. *See* Dkt. Nos. 1, 8, 13, 18, 25, 29, 83, 108, 118, 126, 142, 164. He has repeatedly attempted to supplement his claims with new allegations related to subsequent periods of confinement. And he has altered his pre-existing claims by changing

his factual allegations and reframing his legal theories. The Court has noted Plaintiff's ever-shifting narrative several times. *See* Dkt. Nos. 93, 135, 148. And the Court has explained the hardship created by Plaintiff's piecemeal approach to litigation. Dkt. Nos. 103, 128, 135.

For example, as detailed in the Court's order at Dkt. No. 128, Plaintiff substantially delayed the disposition of this case by adding a new, vaguely worded factual allegation at the last possible moment and then pursuing it in bad faith through an appeal. He allowed the Fifth Circuit to rely on his overbroad, dramatic allegation to infer that he was "deni[ed] drinking water for several days, requiring [him] to drink out of the toilet." Dkt. No. 97. But then, after the claim was remanded, Plaintiff added details that he had not previously disclosed, including that he was given drinking water with meals during the relevant time, which greatly diminished the seriousness of the claim. *See* Dkt. No. 128. After Plaintiff's abuse of the court process, the Court sanctioned him $500 as a vexatious litigant. *Id.*

Even with the remaining book-policy claim, he admits that his story and his legal theory have shifted. Tr. at 27. He originally claimed that Defendants' denial of his request to purchase a dictionary limited his ability to prepare coherent legal pleadings. But when he realized he could not satisfy the applicable standard for a denial of access to courts, he reframed his claim as a violation of his First Amendment right to receive information and ideas. *See* Dkt. No. 135. The court allowed him to supplement the book-policy claim with allegations about other books from a subsequent period of confinement. Dkt. No. 30; *see also* Dkt. No. 135.

But then, Plaintiff filed a duplicative lawsuit seeking simultaneous review of the same claims. *See* Dkt. No. 135. So, the Court narrowed its review in this case to avoid

overlap with Plaintiff's other lawsuit. Dkt. No. 93 (limiting review of the book-policy claim to only the dictionary allegation that occurred during Plaintiff's 2017–18 confinement); Dkt. No. 135. This lawsuit continued with Plaintiff's limited book-policy claim. Eventually, his subsequent book-policy claims were dismissed from his other lawsuit, and Plaintiff sought to rejoin them here. But the Court denied the request, finding it improper to "reward Plaintiff's abusive, repetitive litigation strategy . . . by allowing him to expand his book-policy claim again at this late juncture," as the case was ready to be set for trial. Dkt. No. 135 at 6.

Since then, Plaintiff has twice more sought to modify his claims. 164. With trial imminent, he not only seeks to revive his dismissed allegations from his 2020–21 confinement, Dkt. No. 164, but he also asked to bring new, unrelated claims related to a more recent period of confinement in 2024, Dkt. Nos. 142. The record demonstrates that, as argued by Defendants, Plaintiff's allegations have been "moving targets throughout this litigation." Tr. at 23.

Despite his attestations to the contrary, Plaintiff's activity makes it clear that he does not want to proceed to trial on his remaining claim as it has been developed and limited through the course of this lawsuit. He has focused more on adding new allegations and reviving dismissed allegations than on preparing for trial on his 2017–18 dictionary claim. Indeed, almost all of his late-filed proposed exhibits stem from his 2020–21 confinement. Dkt. Nos. 163, 165, 168. But these allegations have been excluded from review in this case because of Plaintiff's attempted manipulation of the court process.

Plaintiff's vexatious tactics have delayed these proceedings at every stage. Additionally, as detailed above, Plaintiff has flouted at least nine deadlines set by the Court.

### C. Record of delay and contumacious conduct

As detailed above, Plaintiff's vexatious tactics have delayed these proceedings at every stage of litigation. Additionally, he has flouted at least nine deadlines set by the Court over the past year and a half. Some of these deadlines he ignored completely. He never complied with the Court's October 4, 2023 order to disclose the identity, location, and relevant knowledge of potential witnesses. Nor did he ever file a list of witnesses he expects to call at trial. He did not contribute in any way to the proposed pretrial order or submit any proposed jury instructions. And he never attempted to confer with defense counsel about any of the pretrial materials.

And when Plaintiff did respond to the Court's orders, he often did so unapologetically late. He was required to submit his final amended pleadings by December 15, 2023. Instead, he filed four additional motions to amend or supplement, all of which were late. *See* Dkt. Nos. 108 (four days late); 126 (more than six months late); 142 (more than a year late); 164 (17 months late). Much of his proposed amended and supplemental claims were frivolous, repetitive, or otherwise improper. *See* Dkt. Nos. 128, 135, 144. Other parts of his late amendments shifted and reframed his claims significantly. *See* Dkt. No. 128. Plaintiff was also late in responding to Defendants' motion for summary judgment. Dkt. No. 118. Finally, with trial scheduled to begin in less than two weeks, Plaintiff's filed his exhibit list and his objections to Defendants' exhibits ten days late.

The Court has been lenient before in permitting Plaintiff's untimely filings. *See* Dkt. No. 128. But the Court warned Plaintiff that, going forward, the rules would be strictly enforced. Dkt. No. 128. That day has come. The Court strikes Plaintiff's late-filed pretrial materials, Dkt. Nos. 161, 162, 163, 165.

And Plaintiff cannot attribute his lackadaisical prosecution to the hardships of his confinement in the Texas Civil Commitment Center. Despite his inactivity and untimeliness in this case, Plaintiff has been actively litigating other matters. *See* Dkt. No. 167. Instead of preparing for trial in this case, Plaintiff prepared and filed two new complaints in this Court. Nos. 5:25-cv-00078; 5:25-cv-0101. And he has filed various motions, briefs, and notices in other pending matters in the Western and Southern Districts of Texas and the Fifth Circuit. *See* Dkt. No. 167. Plaintiff has clearly not made trial preparation in this case a priority—likely because it involves only a claim of being denied a dictionary several years ago. But that is no excuse for Plaintiff's repeat failures to comply with Court orders—especially when trial is imminent.

### D. Aggravating factors

The Court finds that all of the aggravating factors are present here. First, because Plaintiff is proceeding pro se, the delay is attributable to him alone. His filings are often lengthy, repetitive, and frivolous. Moreover, he has repeatedly failed to comply with the Court's deadlines, often either ignoring them completely or submitting his responses late.

Second, his conduct has caused actual prejudice to Defendants. Defendants have been actively participating in this case for three and a half years. *See* Dkt. Nos. 41–47 (answers filed on November 9 & 15, 2021). They have dutifully responded to Plaintiff's frequent, and often lengthy, filings. *See* Dkt. No. 101 (explaining that "[e]ach filing requires numerous defense attorney hours to go through . . . then craft a responsive pleading"). Moreover, as trial draws nearer, Defendants have spent considerable time and resources preparing, while Plaintiff has turned his attention elsewhere. And, if permitted, his late filings would once again force Defendants to shift or supplement their trial preparations—

this time on the eve of trial. That seems to be Plaintiff's intent—he recognizes that every stage of litigation, including discovery, trial, and appeal, is "expensive and time consuming," and he admitted that he wants to "make them spend a lot of money to teach them a lesson." Dkt. No. 101, Exh. A. The Court will not permit him to abuse the Court's rules and forum to unreasonably burden his opponent.

Finally, the Court finds that Plaintiff's conduct in delaying the resolution of this case is intentional. As explained above, Defendants have presented evidence of Plaintiff's bad faith in pursuing his claims. And the record in this case demonstrates Plaintiff's repeated manipulation of the judicial process. *See* Dkt. Nos. 128, 135, 148. Despite ample notice of the Court's deadlines, Plaintiff continues to flout them.

### E. Consideration of lesser alternatives

The Court recognizes that dismissal with prejudice is a severe sanction. However, given the record here, no lesser sanction would serve the interests of justice. The Court has already imposed a monetary sanction for Plaintiff's abusive litigation practices. Dkt. No. 128. Plaintiff has not satisfied the sanction, nor has he let it deter him. *See* Dkt. Nos. 142, 148; Civil Action Nos. 5:25-cv-00018; 5:25-cv-00101. Thus, the Court finds that assessment of an additional fine would not be effective. Nor would another monetary sanction alone prevent additional prejudice to the defendants.

Additionally, the Court warned Plaintiff that it would "consider the entire range of sanctions available" if he failed to comply with the Court's deadlines. Dkt. No. 104. The Court also warned Plaintiff that he was not necessarily entitled to benefit from the mailbox rule as a civil detainee. Dkt. No. 128; *see also* Dkt. No. 135. And the Court was lenient, permitting some of Plaintiff's filings despite their untimeliness. Dkt. No. 128. Then, after

years of frustrating delays, frequent and lengthy filings, and other abusive tactics, the Court expressly warned Plaintiff that it would strictly enforce all applicable standards and rules, regardless of his pro se status. Dkt. No. 128. And it reminded him of that warning at least once. Dkt. No. 148.

Finally, a dismissal without prejudice is not possible because of the operation of the statute of limitations. Nor would a dismissal without prejudice be just in light of the time and expense Defendants have already endured.

In sum, the record here supports a finding of intentional delay and contumacious conduct. Moreover, the repeated delays and missed deadlines are a result of Plaintiff's intentional conduct, and Plaintiff alone is responsible for his conduct because he is self-represented. Finally, Plaintiff's conduct here has caused actual prejudice to the Defendants. As a result, the Court finds that dismissal with prejudice is warranted, and that no lesser sanction would serve the interests of justice.

### F.     Relevant precedent

Review of Fifth Circuit precedent is instructive, here. The Court recognizes that the law favors resolution of claims on their merits. With this in mind, the Fifth Circuit has consistently found dismissal with prejudice improper where the record shows noncompliance with only two or three orders, rules, or deadlines. *See Callip*, 757 F.2d at 1520–21 (discussing *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 556 (5th Cir. 1981), and collecting other cases). And even when the noncompliance is more extreme, the Fifth Circuit cautions against dismissal when the derelictions are attributable to counsel without the knowledge or participation of the party. *See Flaksa v. Little River Marine Const., Co.*, 389 F.2d 885, 886–87 (5th Cir. 1968).

For example, when a plaintiffs' attorney failed to conduct meaningful discovery and was six days late in filing a pretrial order and 43 days late in filing proposed findings, the Fifth Circuit found only a "negligent approach" to litigation rather than a clear record of intentional delay or contumacious conduct. *McGowan*, 659 F.2d at 557. The *McGowan* court noted that the plaintiffs themselves appeared to be innocent parties, and the delay was attributable only to their attorney. *Id.* Additionally, the appellate court found no indication that the district court considered any alternative sanctions before resorting to the more severe remedy of dismissal. *Id.*

Similarly, although counsel in *Flaksa* was derelict at every stage of the proceeding, failed to appear at a pretrial conference, then failed to prepare for a second hearing after a short continuance was afforded, the Fifth Circuit found that dismissal was unjust. Specifically, the court reversed the lower court's dismissal because there was no evidence that the party was responsible for counsel's failures and no evidence that the court considered alternative, lesser sanctions, such as disciplining the attorney. 389 F.2d at 887–88. In other words, the Fifth Circuit recognized that dismissal operated as an extreme sanction against an innocent party, and lesser sanctions directed at the problematic attorney would have been a fairer remedy. *Id.*

On the other hand, the Fifth Circuit affirmed a discretionary dismissal when a party's attorney failed to comply with nine deadlines, defaulted on the pretrial order, and otherwise delayed the proceedings at other stages. *Callip*, 757 F.2d at 1521. The party delayed matters more by initiating and abandoning an interlocutory appeal. In that case, the Fifth Circuit noted that the district court was lenient with earlier defaults, giving *Callip* second or third

chances and warnings, and had imposed lesser sanctions prior to dismissal. Under these circumstances, dismissal with prejudice was warranted.

These cases support dismissal here. Plaintiff did not merely miss one or two deadlines. He ignored or defied at least nine of the Court's deadlines. And he is not an innocent victim of derelict counsel. Plaintiff has represented himself throughout this litigation, and he alone is responsible for the litigation strategies or shortcomings that have plagued this case. Moreover, the Court has been lenient, allowing Plaintiff to repeatedly modify his claims and permitting several of his late filings. The Court also considered—and even attempted—less severe sanctions.

The Court admonished Plaintiff that it would consider the full range of sanctions available for noncompliance with its deadlines and scheduling orders. Dkt. No. 104. And after all of Plaintiff's litigation games, the Court expressly warned him that it would "strictly enforce" all applicable rules. Dkt. No. 128. Still, he chose to ignore the Court's instructions and deadlines. He failed to diligently pursue his claims. And he argues that his preparation should not be required because Defendants are capable of guessing his positions and preparing documents on their own. That seems to be the point—Plaintiff has expressed that his desire to cost Defendants money and time is stronger than his desire to remedy his dictionary claim. District courts must be able to hold the litigants appearing before them to some standard. At a certain point, the Court must draw a line and hold to it. We have reached that point here.

4.  **Conclusion**

For the reasons discussed above, the Court grants Defendants' motion to dismiss. Dkt. No. 160. Plaintiff's complaint and all remaining claims are dismissed for want of

prosecution. The Court previously vacated the May 19, 2025 trial setting and the corresponding writ of habeas corpus ad testificandum. Dkt. No. 169.

The Court will enter judgment accordingly.

All other pending motions are denied, including Plaintiff's renewed request to supplement his claims. Dkt. No. 164.

So ordered.

Dated May 15, 2025.

                                                JAMES WESLEY HENDRIX
                                                United States District Judge